INTERNATIONAL & GREAT NORTHERN RAILROAD COMPANY V.
WILLIAM PAPE.

No. 6148.

73   501
78    67
73   501;
91   442;

1.  **Limitation.**—An agreement in behalf of a railway company by which it under-takes to erect and maintain a crossing upon its track, thereby connecting parts of the land through which the road was built, is broken by the refusal of the railway com-pany to make such crossing, and limitation runs from such breach.

2.  **Action in Tort for Damages.**—The action for such breach of contract is differ-ent from an action in tort for damages for the unlawful obstruction of the owner's pas-sage across the railway track, and the action for the tort is changed when by amendment an action for breach of the contract is alleged.

3.  **Amendment—Additional Damages for Same Act.**—An amendment enlarg-ing the scope of recovery upon the act declared on in the original petition does not set up a new cause of action.

4.  **Pleadings—Injury to Crops.**—A petition claiming value of growing crops in-jured by an overflow caused by alleged negligent construction of a railway track should contain the date of the alleged injury.

5.  **Value of Growing Crop.**—It seems that the most satisfactory means of arriv-ing at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also of the expense of such cultivation, as well as the cost of its preparation and transportation to market. The difference between the value of the probable crop in the market and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crop.

6.  **Same.**—It was error to admit as evidence of the extent of injury to a growing crop to allow an estimate of a fully matured crop and from it deduct the value of that obtained, taking no notice of the expense of handling the crop.

7.  **Practice.**—Where injury to land and to the crop growing thereon are claimed it is the better practice to ascertain the value of each separately.

APPEAL from Comal. Tried below before Hon. T. M. Paschal.

This is a second appeal. In the report of the first appeal (62 Texas, 313) is a general statement of the case. This with the opinion here will fully state the facts of the case.

*J. D Guinn,* for appellant. — 1. For construction and meaning of said petition see opinion in this cause styled I. & G. N. R. R. Co. v. Wm. Pape, 62 Texas, 314, 315.

On question of limitation. Rev. Stats. art. 3203; 3 Pasch. Dig., sec. 17,578, and authorities there cited, also sec. 2072; Thouvenin v. Lea, 26 Texas, 613; W. & W. Con. Rep., sec. 342; Woods v. Huffman, 64 Texas, 98.

2. We believe that the court should have required, on special excep-tion, the plaintiff to have alleged the dates of the several injuries for which he seeks redress.

3. The measure of damage for injury to growing crops is the differ-ence of its value immediately before its injury and its value immediately after injury, and not what it would have netted when gathered and car-

ried to market some months after the injury.  I. & G. N. Ry. v. Bene-tos, 59 Texas, 327; S. & E. T. Ry. v. Joachimi, W. & W. Con. Rep., secs. 1139, 482, 298; Thomp. on Neg., sec. 1262, and cases there cited.

No brief for appellee has reached the Reporter.

GAINES, ASSOCIATE JUSTICE.—This case was before this court on a former appeal and is reported in 62 Texas, 313.  The causes of action set forth in the original petition, which was filed the 31st of December, 1881, are shown by the report of the case in the volume cited.  After the cause was remanded an amended petition was filed in December, 1885, and another in December, 1886.  Upon the latter the case was disposed of upon the second trial.  In the original petition damages were claimed for the obstruction to plaintiff's access to five acres of his land, which were alleged to have been cut off from the main tract by the construction of the railroad, and in the former opinion it was held that for this no recovery could be had for the reason that plaintiff was presumed to have been compensated for this damage in the condemnation proceedings.

In the amended petition it was alleged that before the damages were assessed in the condemnation proceedings it was agreed between the agents of the company and the plaintiff that if plaintiff would not claim damages therein for the inconvenience resulting to him from the severance of the five acres by the construction of the railroad the company would construct a crossing to afford him access to such tract for the purposes of cultivation, and that the company had wholly failed to comply with the agreement, and that by its failure plaintiff had been damaged.  To so much of the petition as alleged the contract, its breach, and the damages resulting therefrom the defendant excepted on the ground that the cause of action was barred by limitation.  The exception was overruled and the ruling is assigned as error.  We think the assignment well taken.

The causes of action in reference to the five acres of land set up in the original and in the amended petitions are essentially different.

The former seeks to recover for a tort and the latter for a breach of a contract.  The cause of action for the breach of the alleged contract was complete, at least within a reasonable time after the railroad was constructed—that is to say, some time in the year 1880.  The first amendment setting up the contract was not filed until the latter part of 1885, after a lapse of more than four years from the time the plaintiff could have brought his suit.  The error of the court in refusing to sustain the exceptions indicated requires a reversal of the judgment and renders it unnecessary to discuss the many assignments which relate to that branch of the case.

The exception to so much of the amended petition as claimed damages

for the injury to plaintiff's crops by reason of the alleged inundation of the ten acres of land on the west side of the railroad we think was properly overruled. Damages for the overflow of this land was claimed in the original petition. The amendment merely claims additional damages by reason of an alleged injury to plaintiff's crops, and, though it enlarges the scope of the recovery prayed for, it does not set up in that particular a new cause of action.

We are of opinion that the exception to the amended petition on the ground that it did not allege the time at which the crops were injured should have been sustained. As to the damages to the land they were alleged to have accrued by reason of successive overflows which occurred between the time the railroad was constructed in 1880 and the filing of the petition in December, 1881. This we think sufficiently specific. But there were two crops that may have been damaged during those years, and the plaintiff could and should have stated more specifically the time when the alleged injuries to his crops accrued. Our system of pleading requires that the plaintiff shall state his cause of action with sufficient particularity to apprise the defendant of the special case he is called upon to defend.

During the progress of the trial the plaintiff was permitted to testify over the objection of defendant that by reason of the overflow of his land he got only one bale and a half of cotton, and that but for the overflow he would have got three and a half bales of the aggregate weight of 1750 pounds and of the value of ten or eleven cents per pound. The ground of the objection was that "this was not the proper manner of arriving at the damages under the pleadings in the case and not the measure of damages." In the case of Railway Company v. Helsley, 62 Texas, 596, it is held that where a party's land and crops have been damaged by reason of an inundation resulting from a faulty construction of a railroad track the deterioration in the price of the land and the value of the crops destroyed fix the amount of damages. When the crop is partially injured the rule as generally laid down is that the measure of the damages is the difference between the value of the crop immediately before and its value immediately after the injury. The value of a marketable article is the amount for which it can be sold. But the test of market price can not be applied to such property, as it is not ordinarily the subject of sale. What an article will bring in the market when no other article of a like character has been sold is necessarily a matter of conjecture. It follows that in such a case some other method must be resorted to for the purpose of ascertaining its value. It seems to us that as a general rule the most satisfactory means of arriving at the value of a growing crop is to prove its probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation as well as the cost of its preparation and trans-

portation.to market.   The difference between the value of the probable crop in the market and the expense of maturing, preparing, and placing it there, will in most cases give the value of the growing crops with as much certainty as can be attained by any other method.   But proof of the additional amount of cotton which the plaintiff would have made but for the overflow, and the value of such cotton when ready for market, without evidence as to the expense of cultivating, gathering, preparing it for, and placing it in market, did not show the value of the crop at the time of the injury, and hence did not afford the proper means of measuring the plaintiff's damage.   The testimony without the additional evidence of the expense of maturing the cotton and placing it in market should have been excluded.

It follows from what we have already said that the charge of the court as to the measure of damages is subject to criticism.   That portion of the instructions reads as follows:   "The measure of damages will be the damage to the land, and it is proper to estimate the damage done to the growing crops in estimating the damage done to the land by the overflow, and the difference between the market value of the land before the overflow and after is also a measure of damage for injuries by overflow." It would have been better to have charged the jury to assess the damage to the land and the damage to the crops separately, and that the sum of the amounts so found would be the measure of plaintiff's recovery.

For the errors in the rulings of the court below which have been pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered April 16, 1889.