MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. RIVERHEAD FARM.

Decided February 11, 1909.

1.—Railway—Overflow—Statute—Contract—Pleading.

Plaintiff, alleging the conveyance of a right of way across its land to defendant railway company on consideration of the grantee agreeing to maintain existing drainage and irrigation ditches, set up the construction by defendant of its roadbed without culverts and sluices for the necessary drainage thereof by the natural lay of the land, and the flooding and destruction of his growing crop thereby. Held that the petition declared on was supported by proof and findings by the court of a violation by defendant of its statutory duty to provide for the natural drainage, though not of its contract obligation.

2.—Same—Contract.

The agreement, by a railway purchasing the right of way across land, to maintain the existing drainage and irrigation ditches thereon, did not relieve the company from its statutory obligation with reference to constructing its road with the culverts and sluices necessary for the natural drainage.

3.—Overflow—Injury to Crop—Damages.

The measure of damages for wrongful destruction of plaintiff's growing crop was its value at the time of destruction, and for its injury the difference between its value before and that after the injury; but in arriving at such value it is proper to consider the degree of maturity and probable yield of the crop, the cost attending its future growth and marketing, and the price which it would then have yielded if not destroyed or injured; and the enumeration by the court, in its findings of the facts proven in regard to these matters does not show that his finding of the extent of the damages, arrived at by this means, was based on an improper view of the measure of damages.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*Fiset & McClendon*, for appellant.—Where the parties contracted with reference to the character of drainage the railroad was to provide, they are presumed to have fixed the rights of both parties regarding drainage. Such contract imposed upon the railroad the burden of draining the land according to its then uses and future uses as an irrigated farm. Such burdens constituted under the contract the full measure of defendant's liability; and the court committed error in basing plaintiff's recovery upon a failure to comply with the statute.

The court below gave judgment for the value of the crops which probably would have been raised on the farm had the crops not been destroyed before maturity, the value of similar products being made the basis. This was error. The true measure of damages was the value of the crops at the time they were destroyed. Railway v. Joachimi, 58 Texas, 460; Railway v. Young, 60 Texas, 204; Railway v. Bayless, 62 Texas, 570; Railway v. Schofield, 72 Texas, 498; Miller v. Jannett, 63 Texas, 87; Railway v. Hedrick (Sup.), 7 S. W., 355; Railway v. Johnson, 3 Texas Civ. App., 335; Railway v. Jones, 1 Texas Civ. App., 372; Railway v. Carter, 25 S. W., 1023; Railway v. Graves, 1 Texas Civ. App., 299.

O. T. *Brown,* for appellee.

WILLSON, CHIEF JUSTICE.—The appeal is from a judgment in favor of appellee against appellant for the sum of $13,763.53.

Appellee, plaintiff below, alleged that it was the owner of a tract of land near San Marcos; that by means of ditches, etc., said land had been prepared for irrigation and was in a very high state of cultivation; that it had conveyed to appellant for use as a right of way for its railroad in making a connection with another railroad, a narrow strip across said land, and that as a part of the consideration for such conveyance appellant had agreed "to maintain in good condition all drainage and irrigation ditches then existing on said land, so long as the same may be necessary for the proper use of the lands of plaintiff laying upon either side of said connecting tract, for irrigation purposes." Appellee further alleged that appellant in constructing its railroad across said tract of land wrongfully and tortiously failed to first construct sluices and culverts required for the necessary drainage thereof by the natural lay of the land, and never afterwards constructed such necessary sluices and culverts, but on the contrary, "wrongfully and tortiously neglected to do so;" and that, as it was constructed on said right of way, appellant's roadbed intercepted the natural flow of surface waters across said land, operating in effect as a dam, "catching, holding and impounding the surface waters as they reached it, and causing them to flood large portions of said land," on which, it was alleged, appellee had growing a crop of onions. And appellee further alleged that as a result of such waters being so impounded, about fifteen acres of the land on which the onions were growing were so flooded and kept submerged with water as to almost wholly destroy its said crop of onions thereon, to its damage in the sum of $25,000.

The trial was before the court without a jury. From the evidence heard by him the court found as facts: That because of the natural lay of the Holland and adjacent tracts, including an area of over 300 acres, surface water originating on such area before appellant's railroad was constructed across said Holland tract, flowed across the part of same on which appellee's onion crop was growing, leaving the land effectually drained within from two to twelve hours after each rainfall, according to the quantity of rain falling in each instance; that before constructing its railroad across said land appellant did not first con-

struct such culverts and sluices as the natural lay of the land re-
quired for its necessary drainage after the construction of said rail-
road; that such necessary sluices and culverts were not thereafter-
wards, and before appellee suffered the damages sought to be re-
covered, constructed by appellant, though it did construct a culvert and
sluices which were wholly inadequate for such necessary drainage; that
as said railroad was so constructed and maintained across said land,
its bed operated as a dam, intercepting the natural flow of surface
waters, and catching, holding and impounding the same on the land;
that about April 25, 1907, appellee had growing on the land across
which appellant's said railroad had been constructed a crop of onions,
then almost matured and in a "most favorable and promising condi-
tion;" that on or about said day in April there was a heavy fall of
rain on said drainage area; that the flow of surface water on said
area across said fifteen acres, according to the natural lay of the land,
was intercepted by appellant's said roadbed where it crossed said fif-
teen acres, and was held and impounded on the upper side of said
roadbed, thereby submerging and keeping submerged for a period of
from twenty-four to seventy-two hours, the portion of said fifteen
acres (to wit, about eleven acres), lying on said upper side of said
railroad; that while said surface water was so impounded it slowly,
but continuously, passed from said upper side to the lower side of
said roadbed, and so kept the remainder (about four acres) of said
fifteen acres of land, lying on the lower side of said roadbed, con-
tinually flooded and saturated with said water; that on or about May 8,
1907, and on or about June 7, 1907, other rains fell upon said area,
when said land was again in like manner flooded and submerged; that
on each occasion referred to when surface water was impounded upon
said land, the same would, but for the presence of said roadbed, be-
cause of the natural lay of the land, have passed over and away from
said fifteen acres without injury to the crop growing thereupon; that
because said water was so impounded, flooding and submerging the
crop growing thereupon at and for the length of time stated, the
greater part of said crop was destroyed and the market value of the
part not destroyed was greatly depreciated; that the failure of appel-
lant to provide such necessary culverts and sluices for its roadbed
was the proximate cause of said injuries to said crop; that had said
onion crop not been so injured it would have yielded at its maturity
an average of 44,000 pounds per acre for the entire fifteen acres, or
an aggregate of 660,000 pounds of onions, which at fifty pounds to
the crate would be 13,200 crates; that the market value of same at
San Marcos at their maturity would have been $1.75 per crate, or, for
the whole number of crates, $23,100; that the cultivation of said
onions had been completed when the first of said rains fell; that the
actual cost and expense of gathering and preparing the onions for
market f. o. b. cars at the loading station would have been an average
of thirty cents per crate, or, in the aggregate, $3,960, which deducted
from the $23,100, representing what would have been the market
value of the crop but for its destruction and injury, left $19,140 as
its net market value; and that the part of the crop damaged but not
destroyed was gathered and marketed by appellee at an expense of

$1537.50, and brought the sum of $6,913.71, or, less such expenses, the net sum of $5,376.47. On the facts so found by the court he concluded as a matter of law that appellee was entitled to recover the sum of $23,100, as representing what would have been the total value of the crop, less $3,960, representing what would have been the cost of gathering and marketing the entire crop, and less the further sum of $5,376.47, the net proceeds of the part of the crop gathered and marketed, or the sum of $13,763.53, for which amount the judgment was rendered.

*After stating the case as above.*—In its petition appellee alleged that it had conveyed to appellant a right of way for its railroad over and across the fifteen acres of land, and that as a part of the consideration for such conveyance appellant had agreed "to maintain in good condition all drainage and irrigation ditches then existing on said land, so long as the same may be necessary for the proper use of the lands . . . for irrigation purposes." On the trial appellee offered no evidence in support of said allegation in its petition, but appellant offered and the court admitted as evidence the instrument evidencing the conveyance to it of said right of way, containing an undertaking on its part substantially as alleged in said petition. Appellant now insists that the findings of the trial court show the judgment to have based upon its failure to comply with the statute requiring it before constructing its roadbed to first construct "necessary culverts or sluices, as the natural lay of the land requires, for the necessary drainage thereof" (McIlwaine's Digest of Texas Statutes, art. 4436), and that, having such a basis instead of its failure to comply with its contract evidenced by the conveyance to it of the right of way, the judgment is erroneous. We think it is obvious that the basis for the judgment was the court's finding that appellant had failed to discharge the duty the statute imposed upon it, and not a breach of its contract. But we do not think it follows that the judgment therefore is erroneous. The cause of action set up in appellee's petition was not appellant's breach of a contract, but its failure to comply with the requirements of the statute, resulting in injury to appellee. Appellant's answer to the petition was a general denial. If, without pleading it, it was entitled to rely upon a contract as relieving it from liability to appellee for a failure to comply with the statute, it nevertheless, on that account, has here no right to complain, because it appears that it did not prove such a contract. There was nothing in the recitals in the conveyance to it from appellee, showing that the latter had waived, released or in any manner parted with its right to complain of a failure on appellant's part, when constructing its roadbed, to discharge its duty under the law to construct as a part of such roadbed such culverts or sluices as the natural lay of appellee's land rendered necessary for the drainage thereof. The recital in the conveyance, relied upon by appellant to support its contention, evidenced an undertaking on its part, in consideration of the conveyance made to it of the right of way, "to maintain in good condition all drainage and irrigation ditches, pipe lines, canals and crossings now existing, so long as the same may be deemed necessary by the party

of the first part (appellee), and from time to time provide and thereafter maintain such additional drainage and irrigation ditches, pipe lines, canals and crossings as may be necessary for the proper use of the lands of the party of the first part, lying upon either side of said connecting tract, for irrigation purposes." Evidently it was not the intention of the parties that the undertaking specified on appellant's part was to so operate as to relieve it of the consequences to appellee of a failure to perform its statutory duty. Instead, we think, it should be held to have been intended to add to that duty the further duty to maintain in good condition ditches, pipe lines, etc., then existing for the purpose of irrigating the land, and to provide and afterwards maintain such additional ditches, pipe lines, etc., as might become necessary for that purpose. For discharging its statutory duty appellant had no right to exact a reward. For releasing its right to recover damages it might become entitled to as the result of the failure of appellant to discharge that duty, appellee was entitled to exact a reward. In fact, it could not be held to have released its rights to such damages in the absence of proof that there was a consideration to it for such a release. Yet, if the undertaking on appellant's part be construed as a release by appellee of its right to such damages, it would appear not only that it received no consideration for same, but on the contrary, that it had purchased the privilege to do so by a conveyance of the right of way to appellant. It is clear, we think, that the court did not err in refusing to treat the suit as one for damages for a breach by appellant of its undertaking in the contract. The first, second, third, fourth, fifth and sixth assignment of error therefore are overruled.

Appellant further insists that in determining the amount of appellee's damages the court resorted to another measure than the one authorized by the law to be used in this case, and that therefore the judgment is erroneous. We think it is true, as appellant contends it is, that the true measure of appellee's damages was the market value at San Marcos of the portion of the crop destroyed at the time it was destroyed, and the difference between the market value at San Marcos of the portion thereof merely injured immediately before it was injured and its market value at said place immediately after it was injured. Kansas City, M. & O. Ry. Co. v. Mayfield, 107 S. W., 940. But we are not prepared to say that the trial court did not resort to this measure in determining the amount of damages found by him in appellee's favor. On the contrary, we think, we should assume that he was controlled in determining the damages by the proper measure therefor. In determining the market value of the crop immediately before and immediately after it was injured or destroyed the court was authorized to consider evidence showing the "probable yield under proper cultivation, the value of such yield when matured and ready for sale, and also the expense of such cultivation, as well as the cost of preparation and transportation to market." International & G. N. Ry. Co. v. Pape, 73 Texas, 501; International & G. N. Ry. Co. v. Jackson, 47 Texas Civ. App., 26; Raywood Rice & C. Milling Co. v. Langford, 32 Texas Civ. App., 401. Having a right to consider such testimony in determining the market value of

the part destroyed at the time it was destroyed and the difference in the market value of the part injured immediately before and immediately after it was injured, we do not think that the fact that the court in his findings set out such testimony and indicated that he was controlled by it, shows that he resorted to an improper measure in determining the damages. The ultimate finding made by him, that is, that appellee had been damaged in the sum of $13,763.53, we think must be assumed to have been based on the measure authorized by law. The seventh, eighth and eleventh assignments of error are overruled.

By its tenth and eleventh assignments of error appellant attacks the judgment on the ground that it is excessive. While the judgment is a large one, we can not say that it was not supported by the evidence. In fact, the evidence, it seems, properly may be said to have been sufficient to have supported a judgment for even a greater sum.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.