FIRST NAT. BANK OF COLEMAN v. GATES et al. (No. 6066.)*

(Court of Civil Appeals of Texas. Austin. April 23, 1919.)

1. APPEAL AND ERROR ☞839(1)—REVIEW—DETERMINATION.

Where the trial court disposed of a case solely on defendant's plea of privilege, although the case was also submitted to the jury on the merits, *held* that on appeal by plaintiff from an order transferring the case to another county only the question of venue will be disposed of.

2. VENUE ☞22(1)—ACTIONS AGAINST NONRESIDENT—CODEFENDANTS.

When it is sought to sustain the venue of a suit against a nonresident on the ground that the codefendant resides in the county, the cause of action against the nonresident must be the same, or at least connected, and when they are separate and distinct, the nonresident's plea of privilege should be sustained.

3. VENUE ☞21—RESIDENCE—PRIVILEGE.

The right to maintain a suit in a county away from the residence or domicile of a defendant who pleads his privilege depends upon the existence of facts which constitute the exceptions to the statute, and not upon the mere allegation of facts.

4. VENUE ☞22(1) — PRIVILEGE—CODEFENDANTS—FRAUD.

Where plaintiff's own agent induced the maker of a note to draw a second draft which the defendant bank honored and plaintiff paid, *held* that though the fraud of plaintiff's agent occurred in the county in which the defendant bank did business, a right of action for such fraud was so disconnected with the right of action against defendant bank that its plea of privilege, made under Rev. St. art. 1830, must be sustained.

5. VENUE ☞22(1)—PRIVILEGE—JOINT TORT-FEASORS.

In an action by plaintiff against defendant bank, which honored a second draft drawn by a borrower from plaintiff, etc., *held* that though the borrower resided in the county where suit was instituted, defendant's plea of privilege to be sued in the county in which it did business could not be overruled, on the theory that defendant bank and the borrower were joint tort-feasors or converters of the fund.

6. VENUE ☞27—PRIVILEGE—ASSIGNMENT OF CAUSE OF ACTION.

Where one of the defendants assigned to plaintiff his right of action against a nonresident defendant, *held* that action could not, under Rev. St. art. 1830, subd. 4, be maintained in the county in which the assignor resided, for as the assignment was necessary to give plaintiff a right of action, venue could not, under Act 1913, be obtained in that fashion.

7. VENUE ☞16½ — PRIVILEGE — JOINDER OF ACTIONS.

Jurisdiction of an action against a nonresident defendant, based on the fact that such action was joined with other actions against the same defendant, cannot be obtained, where the court did not have jurisdiction over the actions to which it was joined, none of them falling within the exceptions of the statute as to venue. Rev. St. art. 1830.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by the First National Bank of Coleman against J. W. Gates and the Brownwood National Bank. From a judgment sustaining the last-named defendant's plea of privilege, and transferring the cause, plaintiff appeals. Affirmed.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant.

Harrison & Cavin, of Brownwood, Critz & Woodward, of Coleman, and E. M. Davis, of Burnet, for appellee.

BRADY, J. Appellant brought this suit against appellees in the district court of Coleman county to recover the sum of $3,500. Appellee J. W. Gates answered, confessing the allegations of the petition, and asking for judgment over against the Brownwood National Bank for whatever amount appellant should recover against him. The appellee Brownwood National Bank filed its plea of privilege to be sued in Brown county, which was contested by both appellant and Gates. The Brownwood National Bank also answered to the merits, subject to its plea of privilege, and to the cross-action of Gates, and its answer contained also a cross-bill against Gates.

The cause was submitted to a jury both upon the plea of privilege and the merits, upon special issues, and answers were returned by the jury to most of the questions. The court rendered judgment alone upon the question of venue, sustaining the plea of privilege and ordering the cause transferred to the district court of Brown county, from which judgment this appeal was taken by appellant.

Findings of Fact.

By the undisputed evidence or the findings of the jury, it appears that appellee J. W. Gates had arranged for certain loans with the Bankers' Loan & Securities Company of Ft. Worth, Tex., among which was the sum of $3,500, to be secured by a deed of trust upon real estate in Coleman county, and evidenced by the note of Gates and wife. Pursuant to the arrangement, Gates and wife

executed a note for $3,500, payable to the loan company or order, and Gates drew a draft at Coleman, Tex., in like amount, payable to the order of appellant, First National Bank of Coleman, on the loan company, and directed the latter to charge the amount to Gates and wife. The draft with note attached was received by appellant from Gates, and it deposited to the credit of Gates on the same day the sum of $3,500, which was subsequently checked out by him.

The draft and note were forwarded by appellant to appellee Brownwood National Bank, with written instructions to credit the proceeds to appellant, and with memorandum attached, requesting the collecting bank to wire appellant when the draft was paid. The Brownwood National Bank was instructed to permit B. E. Hurlbut, the agent of the loan company, and who resided in Brownwood, Brown county, Tex., to examine the papers at the collecting bank. Hurlbut requested permission to withdraw the papers from the bank, which was refused, and at the request of appellant the Brownwood National Bank then returned all the papers to appellant. Subsequently the note, draft, and others papers were delivered by appellant to Gates, who agreed to carry the papers in person to Brownwood and permit Hurlbut to examine the same, which was done. On April 10th, the date Gates went to Brownwood for the purpose just stated, he or Hurlbut, or both, delivered the papers to the Brownwood National Bank; there being an issue in the evidence as to the instructions given the bank, and also as to just what papers were contained in the package.

On April 9th, Gates received a letter from Hurlbut, in which, according to the findings of the jury, he falsely and fraudulently represented to Gates, for the purpose of inducing him to execute a new draft, that it was necessary to have a substitute draft, because the original had been received as a cash item, and in order to close up the loan speedily, Gates was induced by this letter to execute another draft for the sum of $3,500, similar to the former draft, but payable to the Brownwood National Bank, or order as requested by Hurlbut. This letter was received by Gates in Coleman county, and the second draft was forwarded by mail from Coleman to Hurlbut at Brownwood. The letter of Gates forwarding the second draft stated that Hurlbut could destroy one or the other of the drafts. The second draft was sent with the intention on the part of Gates, as found by the jury, that it should be substituted for the first; but Hurlbut, on April 10th, a short time after the package of papers had been delivered to the Brownwood National Bank, presented the second draft to the cashier of the Brownwood National Bank, who cashed the same, and deposited to the credit of Hurlbut the sum of $3,500.

213 S.W.—46

The second draft was forwarded by appellee bank, with the original note of Gates and wife attached thereto to a bank at Ft. Worth, and was paid by the loan company, which took up and received the draft and note. The evidence does not clearly disclose who attached the note to the second draft, nor at what time it was done.

Hurlbut made no express or formal claim to be the owner of the draft or its proceeds when he presented it to the cashier of appellee bank, and he in fact had no interest therein, as found by the jury. The loan company would not have paid either the first or second draft, unless accompanied by the note of Gates and wife, and the note was shown to be of the reasonable value of $3,500, and the land securing the same of a reasonable market value in excess of the face of the note.

In connection with the deposit by appellant of $3,500 to the credit of Gates at the time the original draft was received by it, and in the action of the bank in permitting Gates to check out this account, its cashier testified that—

"Mr. Gates had an active account with us all the time, and was depositing and checking, and as a matter of fact, I considered Mr. Gates was good for $3,500 or for $1,200."

The evidence further shows that after all the transactions above recited, reconciliation statements were exchanged between appellant and appellee bank, which showed that no credit had been given to appellant on either of the drafts. Appellant reported to appellee bank that the statements were correct, and made no claim to, nor asserted any interest in, the drafts, or either of them, until after Hurlbut's death, who committed suicide on May 17th.

Appellant pleaded and introduced in evidence a purported transfer and assignment by J. W. Gates to it of the money collected by the Brownwood National Bank on the second draft, and all claims and causes of action in favor of Gates against appellee bank, arising out of the transaction detailed above, and also guaranteeing to appellant the payment of such sum of money with all costs incident to the collection, and reasonable attorney's fees. This written instrument recited that the transfer and assignment was for the purpose of removing any question as to the ownership of the money, and to enable appellant to recover the property to which it was equitably entitled.

The special findings of the jury, which are sustained by the evidence, and which are not already embraced in the foregoing statement of the facts, are as follows:

That appellant told Gates that he should not draw upon the bank for the money placed to his credit until the bank had received a wire to the effect that the draft had been paid. That

the second draft for $3,500 was sent by Gates to Hurlbut to be delivered to appellee bank only on condition that the first draft was destroyed, and that such was the intention of Gates, and it was also his intention that if the second draft was used by appellee bank, it should be in place of the first draft. That appellant did not make a bona fide deposit of $3,-500 to the credit of Gates, in consideration of the delivery to it of the first draft with note attached. That the appellee bank was not guilty of negligence in not forwarding to the loan company the first draft, and that the same was not received by the collection clerk of appellee bank. That the note of Gates and wife was attached to the second draft of $3,500, at the time it was forwarded by appellee bank to Ft. Worth for collection, and at the time it was paid by the loan company. That the Brownwood National Bank had reasonable grounds for supposing and believing that Hurlbut was holder and owner of the second draft at the time it was delivered to it, and at the time it credited Hurlbut's account with the sum of $3,500. That it was the intention of appellant at the time the first draft was delivered to it by Gates that it should collect the draft for Gates, and that it was by it received for collection; and that appellant intended the drafts and papers to be the property of Gates, when it redelivered them to him. That it was also the intention of appellant, at the time it delivered to Gates the papers returned to it by appellee bank, that the draft should be collected for Gates, and that such was also the intention of Gates. That the teller of appellee bank, at the time of the delivery to him by Hurlbut of the second draft, believed that Hurlbut was the owner thereof. That Gates, at the time he executed and mailed the second draft, intended that the proceeds of the draft or note against which it was drawn should go to appellant, and that he never intended that any other person or bank should receive the proceeds thereof. That Gates did not authorize or instruct Hurlbut to cash the second draft. That Gates instructed the agent of appellee bank, at the time he delivered the papers to it, to handle the drafts for him and to remit the proceeds to appellant for his account. That Gates did not authorize or instruct Hurlbut to deposit the proceeds of the second draft to the credit of appellant. That Gates instructed Vaughn Ray, the collection clerk of appellee bank, to permit Hurlbut to take out any papers for examination, and to take his receipt therefor. That the officers and employés of appellee bank considered Hurlbut financially responsible in his business dealings at the time of these various transactions. That appellee bank did not detach the note from the first draft, and did not attach the same to the second draft, and that neither it nor any of its officers or employés instructed Hurlbut to do so. That appellee bank did not get the benefit of any of the proceeds of the second draft. That Hurlbut did not get permission from Gates to inspect and take possession of the note. That Vaughn Ray, the collection clerk of appellee bank, had no authority other than to receive and keep for safe-keeping papers delivered to him, and to attend to the collection of local items. That the teller of appellee bank had no knowledge that the first draft was in the possession of appellee bank, or its collection clerk, at the time he placed

the $3,500 to the credit of Hurlbut, but that he did know that the second draft was drawn against the $3,500 note. That the first draft was never paid, and that appellant was never notified that it had been paid. That appellant was not guilty of negligence in delivering the draft and papers to Gates after same had been returned and delivered to it by appellee bank, and in permitting Gates to carry them to Brownwood, and allowing Hurlbut to inspect the same. That Gates did permit Hurlbut to handle and inspect these papers, but was not guilty of negligence in so doing.

There were a number of questions to which the jury made no answers, and which they so reported to the court but the trial judge stated that he would receive the verdict upon the answers made, which was done.

### Opinion.

[1] It has been suggested by counsel for the Brownwood National Bank, in the event we should decide that the venue of the cause was properly changed to Brown county, that we also indicate our views upon the questions involved on the merits, for the guidance of the court below. We are of the opinion that it would not be proper for us to accede to this request, and to express any opinion upon the merits of the case prior to the adjudication by the trial court. The judgment below was confined to the matter of venue and the appeal is from the interlocutory order transferring the cause. The only matter presented to us for review is the correctness or incorrectness of this order; and, while manifestly it will be difficult to decide the questions of venue without discussing the facts or the significance of the facts, and without seeming to indicate a view upon the merits, our decision and our opinion will be limited to the questions of venue, and our discussion must be understood as affecting only those questions.

[2-4] The grounds for venue in Coleman county relied upon by appellant and by appellee Gates were that the Brownwood National Bank was a private corporation, and, under subdivision 24 of article 1830, Revised Statutes, appellant had the right to bring its suit in the district court of Coleman county, in that a part of its cause of action arose in that county; and, further, that appellee, Gates, was both a proper and necessary party defendant in the cause, and, he being a bona fide resident of Coleman county, the suit was properly brought there under subdivision 4 of said article; and, finally, that a case of fraud committed in Coleman county was alleged, authorizing suit in that county, under subdivision 7.

As we understand the effect of our present venue statute, appellant's right to the benefit of any exceptions named in article 1830, Revised Statutes, where a plea of privilege had been properly filed and contested by controverting affidavits, is confined to the

exceptions specifically invoked in the counter affidavit. Upon this assumption, we will proceed to examine and to as briefly as may be discuss the contentions of appellant.

In its brief or written argument in support thereof, appellant states that the petition contained three counts in the alternative, the basis of each being that it acquired the legal and equitable ownership of the sum of $3,500 collected by the Brownwood National Bank under the second draft; and that, by virtue of its legal and equitable ownership of the fund, it was entitled to judgment against both Gates and appellee bank, because of the drawing of the second draft and the delivery in connection therewith to such bank of the $3,500 note, and the obtaining of possession of the money by it.

Appellant's claim as to the three alleged counts in the petition is substantially as follows: That the first count asserts a purchase by appellant of the original draft, thereby becoming in law and equity the owner of the draft and the fund, by the delivery of the draft and note to appellant in Coleman county as security for the money paid by it on the draft, and that, through the negligence and acts of Gates and appellee Brownwood National Bank, the value of appellant's draft was destroyed, and thereby appellee bank was guilty of conversion; that the second count eliminated the allegation of negligence, and did not sue for conversion of the note and proceeds, but averred that appellant was the equitable owner of the draft with note attached, and of the fund on which the draft was drawn; and that Gates and appellee bank acted together in the collection of the fund, and appellant was therefore entitled to judgment against them jointly for the fund so collected.

Appellant's statement of this count seems to be based upon the theory that it was the equitable owner of the fund, and also acquired an equitable lien on the fund for its reimbursement for the money advanced to Gates, and was entitled to payment from appellee bank by reason of its possession of the fund.

The third count, being also in the alternative, was a suit to recover the same fund, and is based upon the rights alleged to have been conferred upon appellant by virtue of the purported transfer and assignment from Gates to appellant of his right to recover the fund and his guaranty of the payment of the amount of the note and draft. It is claimed that this instrument recognized the title and ownership of appellant under the original transaction, and confirmed by formal transfer the equitable title already existing, relating back and taking legal effect at the time the consideration was advanced to Gates and received by him in the first instance.

In determining the several questions of venue arising under appellant's contentions, it is important to keep in mind certain legal rules announced by our courts. It is well settled in this state that when it is sought to sustain the venue of a suit as against a nonresident, on the ground that a codefendant resides in the county, the cause of action against each must be the same, or at least connected. When the causes of action are separate and distinct, the codefendant is neither a proper nor necessary party, and a plea of privilege by the nonresident should be sustained. Hollaway v. Blum, 60 Tex. 625; Railway Co. v. Pape, 73 Tex. 501, 11 S. W. 526; Ft. W. Horse & Mule Co. v. Smith, 149 S. W. 201; Railway Co. v. Levy, 23 Tex. Civ. App. 686, 57 S. W. 866; Moorhouse v. King County Land & Cattle Co., 139 S. W. 883.

It is also established law that the right to maintain a suit in a county away from the residence or domicile of the defendant who pleads his privilege must depend upon the existence of the facts which constitute the exceptions to the statute, and not upon the mere allegation of facts. Hillard Bros. v. Wilson, 76 Tex. 180, 13 S. W. 25; Groos v. Brewster, 55 S. W. 590.

Under the present venue statute and the procedure therein provided to try the issue upon sworn plea and controverting affidavit, the force and reason of this rule is, perhaps, even stronger.

With these legal standards in view, let us proceed to briefly examine appellant's alleged causes of action with relation to the proper venue of the suit.

First, as to the original undertaking of the Brownwood National Bank to collect the initial draft: When, at the request of appellant, it returned the draft, note and other papers, it seems that all connection between the two banks, under the evidence and the findings of the jury, ceased, and no liability could be claimed against appellee bank on that transaction. If any cause of action arose against Gates by reason thereof, it would not extend to the Brownwood National Bank, and the latter was not shown to be connected therewith. If it be claimed that Gates was liable to appellant as a drawer of the draft, and the Brownwood National Bank also liable to appellant by virtue of having accepted the draft for collection, still, the venue as to the latter would be in Brown county, because the causes of action would not be the same.

Upon the theory of fraud committed in Coleman county by Hurlbut we may assume that Gates and even appellant, would have a cause of action suable in Coleman county, but there is nothing to connect the Brownwood National Bank with such fraud. Both the evidence and the findings of the jury are to the effect that the latter had no knowledge or notice of Hurlbut's fraudulent acts

or intentions, and that when he deposited the second draft, the Brownwood National Bank had reason to believe, and did believe, that Hurlbut was the true owner thereof and entitled to its proceeds.

Under these circumstances, we do not think the venue as to appellee bank could be sustained in Coleman county on this branch of the case, either upon the theory of fraud committed there, or that part of the cause of action arose in such county.

[5] Now, let us consider the theory that by the first two counts of the petition appellant alleged causes of action maintainable in Coleman county. It is claimed that through the negligence and acts of Gates and the Brownwood National Bank, the value of the draft was destroyed, and the bank was liable to it for conversion; and, further, that, the bank having acted with Gates in the collection of the fund, to which appellant was equitably entitled, they were jointly liable to appellant, eliminating the question of negligence or conversion. In view of the evidence and the findings of the jury, it would be a generous concession to admit that appellant showed itself either legally or equitably entitled to the $3,500 collected by the Brownwood Bank, as an equitable fund. However, for the present purposes of this inquiry only, that much will be assumed. What is the result?

The undertaking, if any, by appellee bank to collect the fund was made in Brown county, and there was no promise in writing to pay in Coleman county. Under the evidence and the jury's findings this obligation was to Gates. If he had any cause of action against appellant, it was in Brown county, and the venue was there. If he in turn was liable to appellant for the fund or its value, by reason of the relation between them, it does not follow that it would be a joint liability. On the contrary, we are of the opinion that no such connection was shown. The fund was received in Brown county when collected, and if converted was converted there; and, as to either Gates or appellant, a suit for the same or its value was maintainable only in that county where the convertor had its domicile. The proof is wholly lacking to show that Gates and the Brownwood Bank jointly converted the fund, or that they acted together in destroying the value of the draft. There is neither allegation nor proof of a conspiracy between them to collect and appropriate the fund, and such a theory would be entirely inconsistent with appellant's suit. The mere fact that Gates performed certain acts and the Brownwood Bank certain others antecedent to and in connection with the collection of the draft would not so connect them as to make them jointly liable to appellant, under the evidence and the jury's findings. There is no pretense that they shared in the actual benefits of the fund, for both Gates and appellant were claiming it, as against the Brownwood Bank, and Gates undertook to assign his rights to appellant. If Gates on the trial or when the suit was brought asserted any claim to the fund, it was not adverse to appellant, but for its benefit; and we cannot see anything in the facts proven or found by the jury to support the theory of joint tort-feasor or convertors, or joint possessors of the fund. Therefore we think the claim of venue in Coleman county, based upon these theories, must fail.

As we have above indicated, it is not clear by any means that appellant showed an equitable title or interest in the $3,500 collected by Brownwood National Bank on the second draft, as an equitable fund. Indeed, we regard the findings of the jury as sufficient to preclude this claim, in so far as venue is concerned. For this reason also appellant's claim for venue in Coleman county, predicated upon the first two counts in the petition asserting an equitable title or interest in the fund, must be denied.

[6] There is the further contention that the third count in appellant's petition, being a suit in the alternative to recover the same fund, based upon the assignment from Gates to appellant, confers venue upon the district court of Coleman county under subdivision 4 of article 1830, Revised Statutes. This exception is to the effect that where there are two or more defendants residing in different counties, the suit may be brought in any county where either of the defendants reside. However, it is expressly provided in this section that the transfer or assignment of a note or chose of action shall not give any subsequent holder the right to institute suit thereon in any other county than that in which it might have been prosecuted if no assignment or transfer had been made. Under this proviso, we think it clear that appellant obtained no rights as to venue by virtue of the purported transfer or assignment by Gates of the choses in action claimed by him.

It is asserted, however, that this case does not fall within the purview of the proviso in the act of 1913 (Acts 33d Leg. c. 177 [Vernon's Sayles' Ann. Civ. St. 1914, art. 1830]), because the assignment merely recognized, confirmed, and transferred the equitable title already existing. In effect, this contention advances the claim that appellant is not a subsequent holder of the causes of action assigned by Gates. We cannot assent to the suggestion. If this theory be correct, the assignment was futile and unnecessary. Without the assignment, as we have above indicated, appellant had no cause of action maintainable in Coleman county as against Brownwood National Bank. With it, it gained no right to maintain venue in Coleman county as against appellee bank, for the rea-

son that the statute plainly forbids such result.

[7] There only remains to be considered the claim that the district court of Coleman county had jurisdiction over the latter count, because of its having been joined with previous counts, even if it were the assertion of an independent cause of action. As we have seen, and especially under the present venue statute, the right to maintain venue as against the sworn plea of a nonresident defendant, must depend upon the existence of the facts constituting an exception to the statute, and not upon mere averments. We have reached the conclusion that under the facts proven at the trial, appellant showed no right to maintain the suit in Coleman county under the first two counts of the petition. Therefore the third count, if depending upon the first two counts, must stand upon its own merits for venue, upon the failure of the facts to support either of the first two. This is not a question of jurisdiction of the subject-matter or of the amount in controversy where the petition discloses jurisdiction, in which instance it has been held that, in order to question the jurisdiction, it is necessary to allege that there was a fraudulent purpose in stating the amount in controversy, or in the joinder of causes of action. Furthermore, under the existing venue statute, the defendant claiming the privilege makes a prima facie case for transfer of the cause when he files the proper verified plea. Upon controverting affidavit, issue may be joined, but the statute contemplates and requires that the issues of fact as to the existence of exceptions should thereupon be tried, without any further averment by the defendant. We are of the opinion that the joinder of the last count with either or both of the first two does not help appellant's situation, under the facts and findings of the jury.

We have considered all the other assignments in the brief, affecting the questions of venue, and they are each overruled.

Believing that the trial court did not err in transferring the cause to Brown county, and finding no reversible error in the record, the judgment is affirmed.

Affirmed.

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes