## ABILENE & S. RY. CO. v. HERMAN.
### No. 944.

Court of Civil Appeals of Texas. Eastland.

Feb. 19, 1932.

Rehearing Denied April 1, 1932.

See, also, 31 S.W.(2d) 682.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellant.

Scarborough, Ely & King, of Abilene, for appellee.

FUNDERBURK, J.

Henry Herman brought this suit against Abilene & Southern Railway Company to recover damages. Plaintiff alleged, in substance and effect, that he owned forty acres of land near Abilene, through which ran Cedar creek; that from an abundant supply of water in said creek he had been for many years prior to 1927 irrigating about fifteen acres of land, known as Henry Herman's Gardens, and thereby producing garden vegetables for which there was a ready market at all times in the nearby city; that as profits from crops of vegetables so raised he had been making annually an average of $500 per acre upon the fifteen acres; that along the creek banks he had beautiful trees which made his place highly attractive and beautiful; that he had a beautiful grove where he permitted picnic groups to assemble, the beautiful trees being situated near the water, where people would come and picnic and fish, and that he had a suitable place for bathing and people would come and have picnics and go in bathing and would fish, for all of which the plaintiff charged a fee; that plaintiff had a water well near the creek which furnished good and wholesome water for plaintiff's domestic purposes.

It was alleged: "That the defendant has been using crude oil for fuel for several years, and permitted oil to escape from its premises onto plaintiff's premises during the crop season of 1927, 1928 and 1929 in such quantities as to render the water unfit for irrigation. * * * That the defendant * * * permitted the oil to accumulate on plaintiff's water hole and thereby render it unfit for irrigation. * * * That in 1927, beginning about the first of April and through the balance of 1927 and 1928 and 1929, the defendant permitted certain waste oil from his (its) roundhouse and engines to drain upon this plaintiff's property." Another allegation was to the effect that defendant had a large oil storage tank on its premises, from which, in the latter part of 1928, defendant negligently and carelessly permitted several thousand barrels of oil to escape and drain onto plaintiff's premises. It was alleged, as a resulting injury or damage from the escape of the oil from the tank, that it "thereby destroyed a large part of plaintiff's trees along the bank of the creek. * * * That defendant burned the oil that escaped onto plaintiff's premises and destroyed a large number of plaintiff's trees."

Treating the allegations quoted in the preceding paragraph as those charging the wrong of the defendant, the allegations as to the effect, injuries, and damages resulting therefrom were substantially as follows: That defendant permitted the oil to accumulate on plaintiff's water hole and thereby render it unfit for irrigation; that it destroyed all of his fish; rendered his stock water unfit for consumption, and caused him great inconvenience in obtaining water for his live stock; that by reason of defendant permitting the oil "to escape * * * onto

the plaintiff's premises and into the stream, that the oil killed a large number of plaintiff's trees—approximately eighty trees"; that by reason thereof the property has been depreciated in value ("on account of the loss of the trees and the ruining of the attractiveness of the place") $2,500; that as the result of permitting the oil to escape onto the property said well was ruined and the water could not be used from it, and the defendant was forced and compelled to run a long line and connect with the city waterworks and plaintiff lost his well, by reason whereof the land was further depreciated in value the sum of $500.00.

Further allegations with respect to damages resulting from the water being made unfit for irrigation purposes were to the effect that plaintiff could not grow vegetables without irrigation; that defendant permitted the oil to accumulate on plaintiff's waterhole; that he lost practically all of his crop in 1927, 1928 and 1929, "all of which was the result of the negligence of the defendant * * * in permitting oil to escape onto plaintiff's premises. * * * That but for the negligence of the defendant in permitting its oil to escape upon plaintiff's land he would have been able in 1927 to have made his crops and would have been able to have made $7,500.00 from the proceeds of his crops, but through the negligence of the defendant and on account of the conduct of the defendant in invading the rights of this plaintiff, plaintiff was wholly unable to make a crop in 1927 and was thereby damaged in the sum of $7,500.00; that plaintiff did irrigate his crops in 1927, but that the oil in his water hole into which defendant permitted the oil to escape killed his crops; that the reasonable market value of such crops at the time they were killed by said oil was $7,500.00. That before he discovered that there was enough oil in his water to hurt his crops he put enough oil on his crops in 1927 to ruin the crop, and plaintiff again tried to irrigate in 1928 and the water he put on his crop had so much oil in it that it again killed his crop, but his crop was ready to go from dry weather when he irrigated it with the oily water and it would have died anyway from dry weather had he not irrigated it, and he was unable to make a crop; and plaintiff was wholly unable again to make a crop in 1929 due to the defendant, all of which was due to the defendant's negligence in permitting oil to escape onto plaintiff's property, all of which was the direct and proximate result of the defendant's negligence, to plaintiff's further damage in the sum of $6,000.00. This plaintiff says that he did cultivate the land in 1928 and 1929 without irrigation and that the difference in the value of the crops grown in 1928 without irrigation and what it would have been with irrigation was $6,000.00. Plaintiff says that the difference in the value of his crop for 1929 without irrigation and what it would have been with irrigation was $6,000.00. That the total loss to plaintiff's crops for 1927, 1928 and 1929 was the direct and proximate result of the defendant's negligence in permitting the oil to escape onto plaintiff's property." Following the above it was further alleged: "That as a result of the acts and conduct of the defendant in permitting oil to escape onto plaintiff's property that he has been unable to make a crop for 1927, 1928 and 1929, to his damage in the sum of $18,000.00 for his crop damages."

Upon the trial, with issues duly joined upon all the facts necessary for plaintiff to recover, the following special issues (with the jury's answers thereto noted) were submitted to the jury:

"Special Issue No. 1: Did defendant negligently permit oil to escape from its premises into Cedar Creek in sufficient quantity to render the water in said creek on plaintiff's premises unfit for irrigation purposes during all or any of the years of 1927, 1928 and 1929? Answer yes or no. Answer Yes.

"Special Issue No. 2: Were plaintiff's crops, for and during all or any of the years 1927, 1928 and 1929, damaged on account of the water in Cedar Creek on plaintiff's premises, being unfit for irrigation purposes? Answer yes or no. Answer Yes.

"Special Issue No. 3: Was the negligence, if any, of defendant, the proximate cause of the water in Cedar Creek on plaintiff's premises being unfit for irrigation purposes for all or any of the years 1927, 1928 and 1929? Answer yes or no. Answer Yes.

"Special Issue No. 4: What amount of money, if paid now, will reasonably compensate the plaintiff for injuries, if any, to his crops for and during all or any of the years of 1927, 1928 and 1929, after March 14th, 1927? Answer $3250.00.

"Special Issue No. 5: Did the oil, if any, in Cedar Creek, on plaintiff's premises, cause his trees near the creek to die after March 14, 1927? Answer yes or no. Answer Yes.

"Special Issue No. 6: Did the loss of such trees, if any, cause a depreciation in the value of plaintiff's land? Answer yes or no. Answer Yes.

"Special Issue No. 7: Was the negligence, if any, of defendant, the proximate cause of such depreciation in value of plaintiff's land, if any? Answer yes or no. Answer Yes.

"Special Issue No. 8: What was the difference in the reasonable cash market value of plaintiff's land, if any, immediately before and immediately after the trees on plaintiff's land died? Answer in dollars and cents. Answer $250.00."

In connection with special issue No. 4, the court specially charged the jury as follows:

"You are charged that in answering Special Issue No. 4, the measure of damages would

be the difference between the reasonable net cash market value of the crops that the plaintiff could reasonably have raised with proper water for irrigation, and the reasonable net cash market value of the crops that he did raise.

"By the term 'net cash market value' is meant the price the crops would have brought in cash on the market, less all the cost of soil preparation, planting, irrigating, fertilizing, cultivating, gathering and marketing the crops."

To this instruction on the measure of damages the defendant objected as follows: "Defendant excepts * * * particularly to the charge on the measure of damages set forth in Special Issue No. 4 and Special Issue No. 5 for the reason that same is not the correct measure of damages in law * * * and for the further reason that, there being a damage to the freehold, the measure of damages in this case would be the difference between the value of the land immediately after the oil came into the creek and before it came into the creek, plus the damage to the crops for that year." Other objections to the "court's charge" were that the evidence was not sufficient to justify the charge submitted by the court on the question of the net cash market value; that there was no competent evidence to justify a submission of special issues numbered 5, 6, and 8. It was objected to the charge as a whole that it permitted recovery of double damages. The judgment was for plaintiff in the sum of $3,500, from which the defendant has appealed.

By appellant's fifth and fifteenth assignments of error it is contended that the court erred in submitting special issue No. 8, for the reason that there was no competent evidence to justify such submission, and that there was no testimony in the record as to what the value of the plaintiff's land was, either immediately before or immediately after the trees in question died. These assignments, we think, cannot be sustained. Plaintiff testified that he knew the value of the land before and the value after the trees were killed, and that the difference in value amounted to $79 per acre for thirty-four acres. There was testimony to show that the trees killed, about thirty-four in number, were shade trees, ornamental and useful as such, and that the killing of same detracted from the good appearance of the place. The testimony which, according to appellant's argument, shows that there was no competent evidence, being mainly the testimony of appellee on cross-examination, at most raises, we think, a question as to the weight of the evidence. The values of the land before and after the injury are important only as evidentiary facts to show the amount of depreciation. It may sometimes happen that it is just as easy to prove the amount of depreciation directly, and it is permissible to make the proof in that way. H. & T. C. Ry. Co. v. Ellis, 111 Tex. 15, 224 S. W. 471; G., H. & W. Ry. Co. v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42. In such a case it is not essential that there be direct and positive testimony showing what was the value of the land before the injury and the value afterward. The jury may be enabled to apply the correct measure of damages without the knowledge of such values, the amount of depreciation being the ultimate fact sought to be established.

By its fourth assignment of error appellant contends that there was no competent evidence to justify the submission of special issues Nos. 5 and 6. This assignment likewise, we think, must be overruled. We are unable to determine, as a matter of law, that there was no evidence of facts to justify the jury in finding that the trees were killed as the result of the oil. As to special issue No. 6, if the oil did kill the trees, the question to be determined by special issue No. 5, the evidence may be regarded as undisputed that the loss of the trees resulted in depreciation of the value of the land. In support of this assignment it is, in effect, argued that we should view the evidence as conclusively showing as a fact that the oil could not have killed the trees in the manner claimed. We cannot take judicial knowledge of that matter, and therefore would not be warranted in accrediting with absolute verity the opinion of the chemist to that effect, who was the witness of appellant.

By certain other of its assignments of error appellant contends that the court erred in refusing to give a peremptory instruction in its favor on the ground that appellee's cause of action was conclusively shown by the evidence to have been barred by limitation. It is claimed that the undisputed evidence showed that appellant, about 1921, erected permanent and valuable improvements on its premises, and had continuously since said time been using fuel oil thereon which had been uninterruptedly escaping into the creek. It was not alleged and no testimony showed (at least conclusively, and as a matter of law) that the nature and circumstances of appellant's business and the operations upon its premises were such that oil *necessarily* escaped therefrom onto appellee's lands. Such fact was essential to bring the case within the rule contended for by appellant, which rule or principle is declared in cases like Houston Water-Works Co. v. Kennedy, 70 Tex. 233, 8 S. W. 36, and Lyles v. T. & N. O. Ry. Co., 73 Tex. 95, 11 S. W. 782, wherein the cause of action was held to have accrued prior to the infliction of the injuries complained of. This suit, as we construe appellant's pleadings, is an action for negligence and not for nuisance. He complained of an act or omission and not of a condition. Negligence and nuisance, both torts, are not the

919

same thing. "A nuisance may exist with or without negligence * * * nuisance is a *condition* and not an *act or failure to act* of the person responsible for the *condition.* * * * If a nuisance exists, the fact that due care was exercised and due precautions were taken against the annoyance or injury complained of is no excuse." (Italics ours.) 46 C. J. 663. Western Tex. Compress Co. v. Williams (Tex. Civ. App.) 124 S. W. 493; Hamm v. Briant, 57 Tex. Civ. App. 614, 124 S. W. 112; Hamm v. Gunn (Tex. Civ. App.) 124 S. W. 113; Sun Co. v. Wyatt, 48 Tex. Civ. App. 349, 107 S. W. 934; M.-K.-T. Ry. Co. v. Williams (Tex. Civ. App.) 5 S.W.(2d) 575.

It is true the act or omission complained of was of about three years' duration, and there is perhaps enough uncertainty in the allegations of appellee's ·pleading to call for application of rules of construction to determine whether complaint was made of an act or omission or of a condition. Appellant by proper exception could have required the appellee to allege more definitely and certainly, not only the facts to show negligence, but more definitely whether one act or omission or a series of similar acts or omissions were complained of, and, if the latter, a separation and allocation of the damages resulting from each. The pleading, however, was not challenged in this respect, and appellant, without excepting to the pleadings or to the manner of submitting the issues to the jury, apparently acquiesced in the submission of the issues in such a way as clearly to treat the wrong alleged against it as if it were a single act or omission. Special issue No. 1, not complained of upon this point, permitted the jury to find that all of the oil escaped in 1927, or even within a few months in said year. Special issue No. 4 was so submitted as to show that it was ·considered immaterial in what year the injuries resulted. But at any rate, whether the complaint was of an act or omission or of a condition, the appellee testified that he received no injuries prior to 1927, and there were no facts, if indeed in the face of the last-named testimony there could be, to show conclusively as a matter of law that the cause of action accrued prior to 1927.

What has been said above in disposing of the assignments on the question of limitation also `disposes of the contention that the court erred in refusing to give certain special issues requested by appellant as presented for our review by the sixth assignment. The requested issues for the most part called for the finding of evidentiary facts, but at that omitted the essential fact above mentioned; namely, the necessity for the escape of the oil, in pursuing appellant's lawful business.

The same is likewise true of assignment· No. 7, wherein it is contended that, at any rate the court should have instructed the jury to find only nominal damages. These assignments are overruled.

We will undertake to dispose of the assignments complaining of the action of the court in instructing the measure of damages *without special mention of them separately.* Appellee's petition alleged facts to show a permanent injury to the land. It particularly alleged a destruction of growing shade trees and the loss of a well of water. For a permanent injury to the land appellee was entitled to recover damages measured by the difference in the value of the land just before the injury and its value just after the injury. Morton Salt Co. v. Lybrand (Tex. Civ. App.) 292 S. W. 264; Owens v. Mo. Pac. Ry. Co., 67 Tex. 679, 4 S. W. 593; Ft. W. & N. O. Ry. Co. v. Wallace, 74·Tex. 581, 12 S. W. 227; G., H. & S. A. Ry. Co. v. Horne, 69 Tex. 643, 9 S. W. 440; G., H. & S. A. Ry. Co. v. Seymour, 63 Tex. 345; Ft. W. & D. C. Ry. Co. v. Hogsett, 67 Tex. 685, 4 S. W. 365; T. & B. V. Ry. Co. v. Gregory (Tex. Civ. App.) 142 S. W. 656; M., K. & T. Ry. Co. v. Malone, 59 Tex. Civ. App. 254, 126 S. W. 936; I. & G. N. Ry. Co. v. McIver (Tex. Civ. App.) 40 S. W. 438; Cosden Oil Co. v. Sides (Tex. Civ. App.) 35 S. W. (2d) 815; Umscheid v. City of San Antonio (Tex. Civ. App.) 69 S. W. 496.

In addition, he could recover as damages the value of growing crops destroyed or depreciation in value of growing crops injured. The measure of the damages to the crops was, if wholly destroyed, the value at the time and place of the destruction; or, if *injured but not destroyed,* the difference between the value just before and just after the injury at the place of injury. T. & S. L. Ry. Co. v. Young, 60 Tex. 201; S. & E. T. Ry. Co. v. Joachimi, 58 Tex. 452; T. & P. Ry. Co. v. Bayliss, 62 Tex. 570; G. C. & S. F. Ry. Co. v. Hedrick (Tex. Sup.) 7 S. W. 353; T. & S. Ry. Co. v. Schofield, 72 Tex. 496, 10 S. W. 575; G., C. & S. F. Ry. Co. v. Holliday, 65 Tex. 512; G., C. & S. F. Ry. Co. v. Jones, 1 Tex. Civ. App. 372, 21 S. W. 145; Jones v. George, 61 Tex. 345, 48 Am. Rep. 280; Id., 56 Tex. 149, 42 Am. Rep. 689; G., C. & S. F. Ry. Co. v. Carter (Tex. Civ. App.) 25 S. W. 1023; I. & G. N. Ry. Co. v. Pape, 73 Tex. 501, 11 S. W. 526. We cannot agree with appellee that the measure of damages for the loss of, or injury to, the crops in this case is the same as applied in cases like Raywood Rice, etc., Co. v. Wells, 33 Tex. Civ. App. 545, 77 S. W. 253; Tres Palacios Rice & Irrigation Co. v. Eidman, 41 Tex. Civ. App. 542, 93 S. W. 698; Irrigation Co. v. Mercedes (Tex. Com. App.) 208 S. W. 904; Louisiana, Rio Grande Canal Co. v. Elliott (Tex. Civ. App.) 193 S. W. 255, etc.

The principle that distinguishes the last-named cases from those we have cited above, as declaring the proper measure of damages, is pointed out in Rogers v. McGuffey, 96 Tex. 565, 74 S. W. 753. Without going into the matter, it will suffice to ·say that the distinction grows out of the fact that a contract

may create rights, the enforcement of which makes necessary the allowance of damages measured by the value of crops (less certain deductions) that would have been produced but for the breach of the contract.

 But while to us it is clear that the court instructed an incorrect measure of damages, and appellant so insists upon this appeal, we think appellant did not make its objection to the instruction in such way as that it becomes our duty to reverse the judgment. It does not serve the purposes of the law, we think, merely to object that an instruction "is not the correct measure of damages in law." The law in requiring that such objection be made before charges or issues are submitted to the jury, with the provision for examination and criticism, contemplates that the objection shall point out wherein a proposed issue or instruction is incorrect. The judge, by proposing to submit an issue or instruction, shows that he regards it as correct. Merely to tell him that it is incorrect affords no aid in discovering and preventing error. The objection in this case contained no suggestion as to why the measure of damages mentioned in the instruction was not correct. The further point of the objection reading, "there being a damage to the freehold, the measure of damages in this case would be the difference between the value of the land immediately after the oil came into the creek and before it came into the creek, plus the damages to the crops for that year" did not further enlighten the court as to the correctness or incorrectness of the measure of damages from the injured crops. Special issue No. 8 calling for a finding of damages for permanent injury to the land was so framed (as we regard the proper practice to be) that it required no instruction as to that measure of damages. There was therefore nothing in the court's instructions, particularly the instructions in connection with special issue No. 4, to which the statement, "there being a damage to the freehold, the measure of damages in this case would be the difference between the value of the land immediately after the oil came into the creek and before it came into the creek," could apply. That merely declared the measure of damages for a permanent injury to the land about which we find no disagreement. The remaining clause, "plus the damages to the crops for that year," clearly has no reference to the *measure of damages* for the injury to the crops; not even the one for the year 1927. It was merely a statement, and a correct one, of what damages could be recovered, but in no way dealing with the subject of the measure of such damages. It is well to observe in this connection that appellant, by its twelfth assignment, in complaining of the measure of damages instructed by the court, insists that the correct measure would be the value of the crop that

the plaintiff could reasonably have raised but for the contamination of the water, if any, by the defendant, and the reasonable market value of the crops that he did raise. It is clear that the measure of damage which appellant now insists was correct would have been subject to the same criticism as the measure of damages instructed by the court. We doubt if in practical effect there is any difference in the measure of damages instructed by the court and that which appellant now insists should have been given. Whether so or not, either would have been error as against a proper objection.

██ We find it necessary also to overrule appellant's assignments complaining of the introduction of testimony. Although it is error to instruct a jury in a tort action like this that the measure of damages is the value of crops that would have been raised, less deductions in the nature of expenses, it does not follow that it is error for qualified witnesses to fortify their opinions as to the value or depreciation in value of the crops at the time and place of injury, to state what, in their opinion, the crops would have produced at maturity, and other facts as to market conditions designed to show what the ultimate profits would have been. A wide latitude in the testimony is necessarily permitted. I. & G. N. Ry. Co. v. Pape, 73 Tex. 501, 11 S. W. 526. Testimony of the general character here complained of was held not to be error in G., C. & S. F. Ry. Co. v. Hedrick (Tex. Sup.) 7 S. W. 353.

██ The argument of counsel, of which complaint is made, may be subject to some criticism. We find it unnecessary to examine into the question critically to determine whether it is or not. Appellant is before this court insisting, in support of its limitation proposition, that the undisputed evidence showed that the oil continually drained into the creek since long prior to 1927. It was undisputed that at one time several thousand gallons of oil escaped and were burned off. Under these circumstances, we think it may be rightly said that it affirmatively appears there could be no injury from a statement by counsel to the jury to the effect that there was so much oil that a hog belonging to Joe Williams was burned up in the oil which accumulated in a drift.

The undisputed evidence does not show that the oil producing the damages complained of came from some other source than appellant's premises. The rights of the appellant, we think, upon this question were fully protected by the instructions of the court.

Being of opinion that the record discloses no reversible error and that the judgment of the trial court should be affirmed, it is accordingly so ordered.