### JEF CHAISON TOWNSITE COMPANY v. BEAUMONT SAW MILL COMPANY ET AL.

Decided December 3, 1910.

**1.—Corporation—Stockholder—Transfer of Stock—Effect.**

A transferee of the stock of a corporation is entitled to all the privileges, rights and benefits of the original owner, and by a transfer the original owner divests himself of all such rights, privileges and benefits; but the rights, privileges and benefits referred to are those only which are incident to the ownership of such stock in common with all other stockholders, and can not include a cause of action then vested in the assignor against a third party for breach of a previous contract in the sale of said stock.

**2.—Same—Purchase and Sale of Stock—Breach of Contract.**

Plaintiff agreed with defendants to surrender to them all of his interest and rights in a certain corporation and to procure for the defendants a conveyance to them of the legal title to the assets of the corporation; and the defendants in consideration of such surrender and transfer agreed to organize a new company with a certain capital stock, a part of which should be paid in by the defendants and applied to the payment of debts and the discharge of liens on the property of the old company which was to be conveyed to the new corporation; and the balance of the capital stock was to be paid in cash and used in carrying on the business of the new corporation; and to issue to plaintiff a certain amount of the stock of the new corporation. Held, a mere loan or advance of money by the defendants to the new corporation for the purpose of paying the debts of the old company was not the same as paying the same amount of money as subscription to the capital stock of the new company, and constituted a breach of their contract by the defendants, for which the plaintiff alone and not a transferee of his stock in the new corporation, could maintain an action.

**3.—Promoters—Breach of Contract—Cause of Action.**

Breach of contract for the acquisition of property by the promoters of a corporation, considered, and held to vest in the party alone from whom the property was acquired, and not in the corporation after it was organized nor in the stockholders generally, a cause of action for damages.

**4.—Contract—Pleading—Allegations in Explanation—No Variance.**

Allegations which do not seek to vary or change the terms of a written agreement, but are only intended to supply the facts necessary to explain its ambiguities, are permissible in a suit upon the contract.

**5.—Same—Absolute Sale—No Lien for Purchase Money.**

Where one who had a contract to purchase real and personal property transferred his right or option to a third party for an agreed consideration, and the property was subsequently conveyed, absolutely and without the reservation of any lien thereon to the transferee, the fact that the transferee failed to pay to the transferrer the consideration agreed upon, would not give the transferrer a lien on the property to secure a judgment which might be ob-

tained by him in a suit for damages for breach of contract. The transferrer never had title to the property, and hence did not himself convey any.

**6.—Venue—Fraud.**

Where fraud is the basis of an action, the venue may be laid in the county in which the fraud is alleged to have been perpetrated, although the defendants are non-residents of such county.

Appeal from the District Court of Jefferson County. Tried below before Hon. L. B. Hightower, Jr.

*E. E. Easterling, F. J. Duff, Watts & Wheat* and *G. P. Dougherty,* for appellant.—The court erred in sustaining the general and special exceptions to plaintiff's petition. McDonald v. Snelling, 96 Mass., 294; Jones v. George, 61 Texas, 345; Taylor v. Dunn, 80 Texas, 652; House v. Houston Water Co., 88 Texas, 233; German A. Ins. Co. v. Water Co., 174 Fed., 764; 1 Thompson on Corporations, secs. 450, 480; 3 Thompson on Corporations, sec. 4145; 7 Thompson on Corporations, secs. 8289, 8290; 3 Cook on Corporations (6th ed.), sec. 707; Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Texas, 350; Alliance Milling Co. v. Eaton, 86 Texas, 401; Kenedy v. Benson, 54 Fed., 836; Alabama Oil & Pipe Line Co. v. Sun Co., 99 Texas, 606; Cook on Corporations (6th ed.), sec. 355.

Where the entire contract is not put in writing, parol evidence is admissible to show the particular element of the contract that was not reduced to writing; or where the language of the written contract is uncertain, ambiguous, parol evidence is admissible to show what the parties mutually meant and understood by the language of the same. Greenleaf's Evidence, 284a; Robertson v. Hefley, 118 S. W., 1159; Swoop v. Liberty County Bank, 113 S. W., 978, citing Wigmore's Evidence, 2430; San Jacinto Oil Company v. Fort Worth Light & Power Company (writ of error refused), 93 S. W., 173; 1 Greenleaf's Evidence. sec. 282.

*Stewarts* and *Greer & Minor,* for appellees.—A transferee of the stock of a corporation is entitled to all the privileges, rights and benefits of the original owner, and by a transfer the original owner divests himself of all such privileges, rights and benefits. 26 Am. & Eng. Ency. of Law, 899; Lowell's "Transfer of Stock," sec. 2; 4 Thompson on Corp., sec. 4383; Strange v. H. & T. C. Ry. Co., 53 Texas, 169; Seeligson & Co. v. Brown, 61 Texas, 117; Spencer v. James, 31 S. W., 543; Bloomington Grove Cotton Oil Co. v. First National Bank, 56 S. W., 553.

Plaintiff's petition did not state any facts upon which a vendor's lien could arise by implication to secure plaintiff's claim for damages as against the properties conveyed by the trustees to Miller & Vidor; but on the contrary expressly shows facts that would negative the existence of such vendor's lien. Therefore the court did not err in sustaining defendant's special exception. Palmer v. Chandler, 47 Texas, 334; Letcher v. Reese, 24 Texas Civ. App., 539; Glasscock v. Glasscock,

17 Texas, 486; Farmer v. Simpson, 6 Texas, 307; Wilcox v. National Bank, 93 Texas, 330; Parker Co. v. Sewell, 24 Texas, 241; Wynn v. Flannegan, 25 Texas, 779.

PLEASANTS, CHIEF JUSTICE.—This suit was brought in the District Court of Jefferson County by the appellant, a private corporation organized and chartered under the laws of the State of Texas, against the Beaumont Saw Mill Company, a private corporation having its domicile in said county of Jefferson, and A. W. Miller, C. S. Vidor and C. H. Moore, who are residents of Galveston County, to recover damages in the sum of $32,250 for the alleged breach of a contract for the purchase and sale of stock in the Beaumont Saw Mill Company.

Plaintiff's petition alleges in substance the following facts as constituting the cause of action upon which the suit is based:

On July 7, 1905, plaintiff was the owner of ninety-five per cent of the capital stock of the United Lumber & Export Company, which company had, some sixteen or eighteen months prior to said date, been placed in the hands of three trustees who were authorized and empowered to carry on the business of said company for the benefit of its creditors, or, if in the judgment of said trustees said business could not be conducted at a profit, to sell and convey all of the property and assets of said company and apply the proceeds of such sale to the payment of the debts due by said company. At the time of the creation of this trust the lumber company owed debts which were secured by said trust deed amounting to $69,000, and in addition thereto was indebted to appellant in the sum of $21,500. Some time prior to the 7th of July, 1905, said trustees, in the exercise of the powers conferred upon them, determined to sell the property and assets of said lumber company for the purpose of paying the debts of said company all of which were still unpaid, and in furtherance of such purpose entered into a contract with the appellant, acting through its agent, Chas. J. Chaison, by which they agreed to sell, and appellant agreed to purchase, said property and assets and to pay therefor a sum sufficient to pay the secured debts due by said company.

The petition then alleges: "That on the 7th day of July, 1905, Chas. J. Chaison acting for the Jef Chaison Townsite Company, as aforesaid, made and entered into an agreement with the defendants, Miller & Vidor, to sell to them all the properties and lands hereinbefore described, and the said Miller & Vidor agreed to purchase said properties from said Chas. J. Chaison. That said agreement for the purchase of said properties was made and entered into verbally between Chas. J. Chaison and A. W. Miller and C. S. Vidor, and while part of said agreement was thereafter reduced to writing, all of said agreement was never put in writing, the part of said agreement which was reduced to writing is as follows:

" 'Mr. Chas. J. Chaison, City.

" 'Dear Sir: Confirming our verbal understanding of this date, we will undertake the purchase and reorganization of the United Lumber & Export Company and liquidate the indebtedness of the trustees and creditors in class A and class B and provide necessary funds to put the business in sound financial condition. The company, when reorganized, to be capitalized at $200,000, $125,000 to consist of preferred stock to bear interest at the rate of seven per cent per annum. In settlement of your claims against the company we will issue to you $25,000 of the preferred and $10,000 of the second series of stock. In order to carry out this reorganization we are to have from 60 to 90 days in which to arrange our funds and investigate the properties and the timber supply. We are to have your entire co-operation and support in making a contract to this effect with the trustees. Will rent houses to men and collect the same at five per cent commission.

Yours truly,

Miller & Vidor.'

" 'I accept the above as confirmation of our understanding and agreement.

Chas. J. Chaison.' "

It is then alleged in substance that the original verbal agreement between said Chas. J. Chaison and the defendants Miller & Vidor, which the written agreement was intended to confirm, provided that said defendants were to form a .new corporation to take over the property and assets of the old company, and that said defendants in consideration of the transfer of said property and assets would pay the debts of the old company, amounting to $69,000, and in addition thereto would pay into the new corporation $31,000; that the new corporation should have a capital stock of $200,000, as stated in said agreement, and that plaintiff should receive as consideration for his services in procuring the transfer of said property and assets and for his interests therein, the amount and kind of stock in the new corporation stated in said written agreement, and that this was the mutual agreement and understanding of the parties and said written agreement was intended to confirm and express same.

"That thereafter, on the 10th day of July, 1905, in pursuance of and in accordance with the agreement set forth by the next preceding paragraph of this petition, the said Chas. J. Chaison directed and caused the trustees in said deed of trust aforesaid to enter into a certain contract with A. W. Miller and C. S. Vidor for the purchase of all of the properties aforesaid of the United Lumber & Export Company for the consideration of $69,000, or an amount sufficient to pay off and discharge in full the debts described in and secured by said trust deed, at any time up to noon of the 15th day of September, 1905.

"Plaintiff shows that while said written contract of July 10, 1905, between said trustees, Geo. C. Greer, P. A. Heisig and W. J. Crawford

and the United Lumber & Export Company, on the one part, and Miller
& Vidor on the other part, states the consideration for the purchase
and sale of said properties to be $69,000, but this plaintiff charges the
fact to be that the real consideration agreed upon between Chas. J.
Chaison and A. W. Miller and C. S. Vidor was, as aforesaid, that said
Miller '& Vidor were to pay $69,000, or such an amount as was nec-
essary to pay off the debts secured by said trust deed, and as a further
consideration for said property, that they were to organize a new cor-
poration and convey said properties to said new corporation, and, in
addition thereto, pay in the sum of $31,000, and that said corporation
should have a capital stock of $200,000, $125,000 of which should be
preferred stock, and the balance, $75,000, common stock, and of this
preferred stock said Chas. J. Chaison was to receive $25,000 and of
the common stock $10,000.

"Plaintiff shows that in accordance with said agreement aforesaid
that said Miller & Vidor investigated the properties of the said United
Lumber & Export Company and found the same to be of a valuation
of about $135,000, and that in compliance with said contract and agree-
ment aforesaid and for the purpose of conveying title to said prop-
erties to the said Miller & Vidor, the said Chas. J. Chaison directed
and caused said trustees in said deed of trust to formally advertise
and sell said property under said trust deed to said Miller & Vidor;
that this mode of sale was agreed upon by all parties as the most con-
venient and efficient method to pass the title of said properties, and,
while said conveyance made by said trustees of September 15, 1905,
recites that the consideration received for said properties was only
$74,000, yet this plaintiff alleges and charges that the real considera-
tion for the purchase of said property as aforesaid was that said Miller
& Vidor should pay said indebtedness provided for in said trust deed,
and should in addition thereto convey said properties together with
$31,000 to a new corporation to be formed, and as a further part of the
consideration of the purchase of said properties convey to said Chas.
J. Chaison $25,000 of the preferred stock of $125,000 and $10,000
of the common stock of $75,000 of said corporation.

"Plaintiff shows that after the said property above described was
so conveyed, as hereinbefore set out, to the said Miller & Vidor, that
the agreement between the said Chas. J. Chaison and the said Miller
& Vidor was modified or changed so that it was agreed by and between
the said Chas. J. Chaison and Miller & Vidor that the stock of the
new corporation should all be common stock, and that common stock
of the par value of $35,000 should be issued and delivered to the said
Chaison in lieu of the $25,000 preferred stock and $10,000 common
stock, as first agreed upon; and it was a part of said agreement that
the said Miller & Vidor were to put up the sum of $140,000 in cash
instead of $100,000; that is to say, that $69,000 was to be applied by
said Miller & Vidor to the payment of the debts of the United Lumber
& Export Company that were secured by the said trust deed given to
the three trustees above mentioned, and the remaining $71,000 was

to be paid into the corporation to be used in financing the new corporation, and said sum was to be the property of the new corporation and an asset thereof, and that it was upon this consideration that said Chaison agreed to said change and accepted said $35,000 of common stock in the new corporation instead of the preferred and common stock that had been originally agreed upon by the parties; and plaintiff charges that all of said agreements between said Chas. J. Chaison and Miller & Vidor above set out were made in Jefferson County, Texas, and for the benefit of plaintiff herein.

"That on the ——— day of September, 1905, a corporation was created under the laws of the State of Texas, by name the 'Beaumont Saw Mill Company,' with a capital stock of $250,000 instead of $200,000 as had been agreed on, all being common stock, and that the incorporators of said corporation were the defendants A. W. Miller, C. S. Vidor and C. H. Moore; and plaintiff charges that said defendants were the active promoters of said corporation, and A. W. Miller and C. S. Vidor conveyed to said Beaumont Saw Mill Company all of the properties conveyed to them by said trustees together with other properties for the consideration of $200,000 in stock of said corporation, the same being all the stock that was ever issued by said corporation, and said Miller & Vidor transferred to Chas. J. Chaison said $35,000 of said stock as part of the purchase price of said property, and that they owned the controlling part of the stock of said corporation and have actually managed and controlled all of its affairs from its creation; and plaintiff shows that on the 13th day of September, 1905, said Miller & Vidor conveyed to said corporation said above described properties and lands; that said corporation became the purchaser of said above described land and properties with full knowledge of all agreements relating to its purchase between Chas. J. Chaison and the defendants, Miller & Vidor.

"Plaintiff alleges that the said Miller & Vidor did not pay off the debts secured by said trust deed in full as they had agreed to do, and plaintiff charges that while the said Miller & Vidor furnished the money to settle the said debts secured by said trust deed at a discount, that they fraudulently charged up against the new corporation, as a debt due and owing by the said new corporation to Miller & Vidor, the full amount of money that went to pay the several debts that were secured by said deed of trust; and that the said Miller & Vidor did not pay into the new corporation the said $71,000 as they had promised and agreed to do, and that all the money furnished by said Miller & Vidor to pay the debts of the United Lumber & Export Company and to finance the new corporation is charged upon the books of the new corporation as debts due and owing by the new corporation to the said Miller & Vidor.

"Plaintiff further alleges that the said A. W. Miller and C. S. Vidor entered into said agreement fraudulently and with the fraudulent purpose and design of deceiving the said Chas. J. Chaison and with no intention of paying the debts of the United Lumber & Export Company

and of furnishing the $71,000 to be used in financing the new corporation, and that the said contract was fraudulently made and entered into by the said A. W. Miller and C. S. Vidor with the fraudulent purpose and design of acquiring the property of the United Lumber & Export Company, which was of the agreed value of $135,000, by advancing to said new corporation to be formed whatever amount of money that was necessary to take over the properties of the United Lumber & Export Company aforesaid, and to finance the new company, said advances not to become assets of the new corporation but as loans from Miller & Vidor to said company, and that said amounts were charged upon the books of the new company as debts in favor of said Miller & Vidor; and while said agreements as hereinbefore alleged were made by Chas. J. Chaison with A. W. Miller and C. S. Vidor, individually, yet, nevertheless, the defendant C. H. Moore was cognizant of and a party to the same jointly with the said A. W. Miller and C. S. Vidor and was interested in said agreements so made by said Miller & Vidor jointly with them and, with full knowledge of the same, acquiesced fully, ratified and adopted and jointly shared in the benefits of said trade and was bound by the same with full knowledge of the acts hereinbefore alleged and charged the results of the fraud so perpetrated upon plaintiff as hereinbefore alleged, but of the exact nature of the extent of said interest plaintiff is not informed.

"Plaintiff shows that if the said Miller & Vidor had complied with their promises and obligations hereinbefore set out, and had paid into said new corporation as an asset the sum of $140,000 by purchasing and taking over the lands and properties of the United Lumber & Export Company for $69,000 and turning $71,000 over to the new corporation as an asset of the new corporation to be used in financing the new corporation, that the stock of the new corporation which said Chas. J. Chaison was to receive, towit: $35,000, would have been of the value of $66,000.

"Plaintiff shows that the said Chas. J. Chaison for and on behalf of the plaintiff herein entered into said contract in good faith and believed that the said Miller & Vidor would fully perform said contract, and the said Chas. J. Chaison was thereby deceived and fraudulently induced to accept the said certificate of stock afterwards issued and delivered to him; that the said $35,000 certificate of stock of the Beaumont Saw Mill Company which was issued and delivered to the said Chaison acting for plaintiff herein was sold by plaintiff on the 13th day of March, 1906, for the sum of $33,750, which was the full value of said stock.

"Plaintiff shows that by reason of the premises it is entitled to recover against the defendants, A. W. Miller, C. S. Vidor and C. H. Moore, the sum of $32,250, the same being the amount that is due plaintiff by defendants as damages by reason of their failure to perform their obligations to plaintiff as hereinbefore set out; and plaintiff shows that the said obligations and promises hereinbefore set out on the part of A. W. Miller and C. S. Vidor, who were acting for themselves and C. H.

Moore, were undertaken and entered into as a part of the purchase price of said above described lands and properties, and that said covenants and agreements above set out on the part of the said defendants, A. W. Miller, C. S. Vidor and C. H. Moore, as aforesaid, formed a part of the consideration for the purchase of said lands and properties of said Chas. J. Chaison acting for plaintiff, and that plaintiff thereby has its vendor's lien on said land and real properties to secure the payment of said $32,250.

"And plaintiff shows that said Beaumont Saw Mill Company purchased said property from said Miller & Vidor, as above set out, with full knowledge of said lien upon said property in favor of said Chas. J. Chaison, who hold the same for plaintiff's benefit."

The petition further alleges that the books and accounts of the Beaumont Saw Mill Company have been fraudulently kept, and the accounts between said company and the defendants Miller & Vidor have been "so mingled and fraudulently entered on said books as that an examination of the vouchers upon which the same is based is necessary for the purpose of justice and that the same may be truthfully ascertained, and for that reason an auditor should be appointed between the parties to make and report upon the same forthwith." The prayer of the petition is as follows:

"Wherefore, plaintiff prays that your Honor appoint forthwith a competent auditor for the investigation of the accounts and examination of the vouchers of said defendant, the Beaumont Saw Mill Company; and upon final hearing hereof, that plaintiff have judgment against the defendants, A. W. Miller, C. S. Vidor and C. H. Moore jointly for its damage in the sum of $32,250, and that a lien be adjudged in favor of the plaintiff upon the land and properties hereinbefore described to satisfy said sum of $32,250, and that said lien be foreclosed on said land and real property against the Beaumont Saw Mill Company, all costs of suit, and for such other and further relief as it may be entitled to either in law or equity, and in duty bound will ever pray."

To this petition the defendants interposed a general demurrer and ten special exceptions. The demurrer and all of the exceptions were sustained by the trial court and, plaintiff declining to amend, the suit was dismissed. The first and second special exceptions are as follows:

"Defendant further specially excepts to the following portions of said petition, towit:

"(1) To that part of the ninth paragraph on page 9 reading thus, 'And that said Miller & Vidor did not pay into the new corporation the said $71,000 as they had promised and agreed to.'

"(2) That part of the tenth paragraph of said petition which constitutes the last paragraph on page 10 thereof, beginning with the words, 'Plaintiff shows that' and ending with the figures '$66,000.'

"And for grounds of exception thereto, defendants say that it appears in plaintiff's petition that it sold its stock without reservation to third persons who now hold and own the same; and it further appears that

the $71,000, alleged to be due the corporation, is an asset of the corporation in which the plaintiff would have no right since it parted with the title to its stock, and in which the purchaser from plaintiff would have the right to require payment of the same if in fact it is an existing obligation against Miller & Vidor.

"It further appears that the plaintiff is in no position to bring suit on account of the non-payment of the said $71,000, but that suit would have to be brought by the corporation, or, upon its refusal, by the stockholders, and it would be an asset in which the corporation and the stockholders alone would have the right to participate; and it is apparent that to subject the defendants to payment of damages for non-payment of same, and to render them liable also to pay same at the instance of the corporation or plaintiff's transferees, would subject them to double liability, and plaintiff has by such sale estopped itself from now claiming any damages or rights in said estate."

These exceptions go to the substance of the cause of action alleged in the petition, and it was upon the ground therein urged that the trial court sustained the general demurrer as well as said exceptions.

We can not agree with the trial court in the holding that the cause of action asserted by plaintiff passed to the transferee of plaintiff's stock in the Beaumont Saw Mill Company as a necessary incident to the sale and transfer of said stock, nor in the holding that the facts alleged only show a cause of action in the Beaumont Saw Mill Company, or in such stockholder of said company as might see fit to sue for the benefit of the corporation and its stockholders.

If the defendants, Miller & Vidor, had complied with their contract with plaintiff, such compliance would have inured to the benefit of the Beaumont Saw Mill Company and all of its stockholders but the contract was not made by plaintiff for or on behalf of the corporation or its stockholders, and neither the corporation nor any of its stockholders as such acquired any right in said contract.

The corporation was not in existence at the time the contract between plaintiff and said defendants was made, and plaintiff had nothing to do with its organization. The contract alleged in the petition is in effect this: Plaintiff agreed with the defendants, Miller & Vidor, to surrender to them all of its interest and rights in the property of the United Lumber & Export Company and to procure for the defendants the conveyance to them of the legal title to said property, and the defendants in consideration of such surrender and transfer agreed to organize a new company with a capital stock of $200,000, $140,000 of which should be paid in by the defendants and applied to the payment and discharge of the liens on the property of the old company which was to be conveyed to the new corporation, and the balance to be used in carrying on the business of the new company, and to transfer to plaintiff $35,000 of the stock of the new corporation thus organized and financed.

If, as alleged in the petition, the defendants, instead of paying $140,000 as subscription to the capital stock of the new company, merely

advanced the money necessary to pay the debts of the old company, and the money used in carrying on the business of the saw mill company, as a loan to said company, it is clear that they breached their contract with plaintiff. It is equally clear that such breach of contract caused plaintiff to suffer damage in the difference between the value of the stock transferred and delivered to it by the defendants under said contract, and the stock which defendants agreed to deliver. Under the contract as alleged, plaintiff was to receive in consideration of its surrender and transfer to defendants of its interest and rights in the old company, $35,000 of capital stock in a new corporation, with a capital stock of $200,000, that would own all of the property of the old company, be free of debt and have $71,000 paid in capital with which to carry on its business, and this was the kind of stock it supposed it was receiving when it took the stock delivered to it by the defendants; but in truth and in fact the stock so delivered to it by defendants was stock in a corporation which owed $69,000 and had no paid in capital upon which to operate.

It seems to us that the case is the same in principle as it would be had defendants agreed to give plaintiff for its interest and rights in the old company so many bushels of wheat of a certain class and grade, and had delivered it wheat of an inferior class and grade. In such case plaintiff would clearly be entitled to recover the difference in the value of the wheat received and that agreed to be delivered, and we can see no reason for not applying the same rule to the facts of this case.

Appellees' counter-proposition, that "A transferee of the stock of a corporation is entitled to all the privileges, rights and benefits of the original owner, and by a transfer the original owner divests himself of all such privileges, rights and benefits," is perfectly sound, but we can not see its application to the cause of action alleged by plaintiff. The rights, privileges and benefits which pass by the transfer of stock in a corporation are those which are incident to the ownership of such stock in common with all other stockholders of the corporation, and can not include a cause of action for breach of contract in the sale of the stock to the assignor by a third party. The right upon which plaintiff's cause of action is based did not accrue to him by his acquisition of the stock in the Beaumont Saw Mill Company and was not a privilege, right or benefit incident to his ownership of said stock, but grew out of a contract to which neither the corporation nor the transferee of the stock was privy. The point has been expressly ruled in the case of Kenedy v. Benson, 54 Fed. Rep., 836.

It would serve no useful purpose to discuss appellant's remaining assignments of error in detail.

The written contract set out in plaintiff's petition recites that it was executed in confirmation of a previous verbal agreement, and the allegations of the petition as to what such verbal agreement contained, in so far as such allegations were only in explanation of and did not vary or change the written agreement, were not subject to exception. We do not think any of these allegations should be held to vary the terms of

the written contract, but only supplied the facts necessary to explain its ambiguities. In so far as the allegations as to the exact amount defendants were to pay into the new company under the original agreement, are concerned, we do not deem them material, for the reason that it is alleged that subsequent to the execution of the written contract a new agreement based on a valuable consideration was made as to the amount to be paid by the defendants, and this agreement and the written contract is the basis of plaintiff's suit.

We think the trial court was correct in holding that the facts alleged in plaintiff's petition do not show it entitled to any lien on the property conveyed to the defendants Miller & Vidor and by them conveyed to the Beaumont Saw Mill Company. Plaintiff conveyed no title to this property, either legal or equitable, and no vendor's lien would arise by implication from the surrender and transfer of its rights under its contract to purchase. The holders of the title to the property conveyed it free of any lien, and it is unnecessary for us to determine whether they might have reserved a lien for plaintiff's benefit. No express lien was reserved, and none could arise by implication or is recognized in equity upon the facts alleged. Farmer v. Simpson, 6 Texas, 307; Palmer v. Chandler, 47 Texas, 334; Letcher v. Reese, 24 Texas Civ. App., 539.

The defendants Miller, Vidor and Moore each filed a plea of privilege to be sued in the county of his residence. These pleas were overruled by the trial court, and this ruling is assailed under appropriate cross-assignments of error. These assignments can not be sustained. The petition alleges fraud committed in Jefferson County as the basis of its suit, and under said allegations the suit could be brought in Jefferson County, notwithstanding defendants did not reside in said county.

The petition alleges that while the agreements were actually made with the defendants Miller & Vidor the defendant Moore was a party thereto and, with full knowledge of said agreements and the fraudulent acts and purpose of the defendants Miller & Vidor, acquiesced in and ratified same and accepted the benefits thereof. This is sufficient to charge Moore with the fraud alleged against defendants Miller & Vidor. Sec. 7, art. 1194, Sayles' Civil Statutes; Whitaker v. Brown, 49 S. W., 1104; Hunt County Oil Co. v. Scott, 67 S. W., 451.

It follows from what has been said that the judgment of the court below should be affirmed as to appellees Beaumont Saw Mill Company, and the judgment reversed and the cause remanded as to appellees Miller, Vidor and Moore.

*Affirmed in part, reversed and remanded in part.*