CITY NAT. BANK OF SPUR v. RHOME-
FARMER LIVESTOCK COMMISSION
CO. (No. 10441.)*

(Court of Civil Appeals of Texas. Ft. Worth.
Nov. 24, 1923. Rehearing Denied
Jan. 12, 1924.)

1. Pleading ⊜⟶111—Action of court in defer-
ring decision on plea of privilege until after
evidence on merits was before court held not
error.

Where issues on plea of privilege and on the
merits were the same, the court did not err in
deferring decision upon the plea of privilege un-
til after the evidence on the merits of the case
was before the court, in view of Vernon's Ann.
St. Supp. 1918, art. 1903.

2. Corporations ⊜⟶503(2)—Action for deceit
against private corporation may be brought
in county other than that of its domicile,
where part of cause of action arose therein.

Where part of a cause of action against a
private corporation for deceit arose in a county
different from that in which the corporation has
its domicile, the action may be brought in the
county other than that of its domicile.

3. Corporations ⊜⟶503(2) — Action against
bank for fraud inducing drawee to pay draft
properly brought in county in which draft was
drawn and paid, notwithstanding location of
bank in other county.

Drawee's action against payee bank, in
which it was claimed that the drawer and payee
bank fraudulently procured drawee's payment
of draft, was properly brought in the county in
which the draft was drawn and paid, though
payee bank was located in other county, under
Rev. St. art. 1830, subd. 7, providing that an
action for fraud may be brought in the county
in which the fraud was committed, and subdivi-
sion 24, providing that a suit against a private
corporation may be brought in the county in
which the cause of action arose.

4. Trial ⊜⟶207—Testimony as to transactions
between plaintiff's employee and one defend-
ant held admissible as against other defend-
ant when limited by instruction.

In drawee's action against payee and draw-
er in which it was claimed that the payee and
drawer procured drawee's payment of draft by
fraud pursuant to a conspiracy between them,
and that drawer did not ship cattle to drawee
to cover amount of draft as he had agreed to
do pursuant to such conspiracy, admission of
testimony of drawee's employee as to conver-
sations and transactions with drawer prior to
the drawing of the draft held not error as to
payee, though drawer permitted a default judg-
ment to be rendered against him, in view of in-
struction charging jury not to consider such
testimony against payee unless jury found there
was a conspiracy between payee and drawer.

5. Evidence ⊜⟶157(8)—Employee who paid
check properly permitted to testify as to fact
of payment.

Drawee's employee who paid check was
properly permitted to testify to the fact of pay-
ment.

6. Trial ⊜⟶365(2) Failure to define term in
special issue held not ground for reversal in
view of answers to other special issues.

In drawee's action against payee and draw-
er in which it was claimed that the payee and
drawer procured drawee's payment of draft by
fraud pursuant to a conspiracy between them,
and that drawer did not ship cattle to drawee
to cover amount of draft as he had agreed to
do, pursuant to such conspiracy, submission of
special issue of whether the drawer and payee
did "act together" in drawing the draft for pur-
pose of obtaining money thereon without mak-
ing a shipment of the cattle, without defining
the term "act together," held not ground for re-
versal, in view of answers of jury to other spe-
cial issues finding that the payee had knowl-
edge of drawer's agreement to ship cattle to
cover draft, that there was an agreement be-
tween the drawer and payee at the time the
draft was drawn that drawer would not ship the
cattle, and that drawer was prevented by the
payee from carrying out his agreement with
drawee to ship the cattle.

On Motion for Rehearing.

7. Witnesses ⊜⟶321—Party may not question
testimony of own witness except to show
witness was honestly mistaken.

A party cannot question the testimony of
its witness except to show that witness was
honestly mistaken in view of Code Cr. Proc.
1911, art. 815.

8. Fraud ⊜⟶58(1)—Evidence held to sustain
finding that drawee's payment of draft was
procured by fraud on part of payee and
drawer.

In drawee's action against payee and draw-
er in which it was claimed that the payee and
drawer procured drawee's payment of draft
by fraud pursuant to a conspiracy between
them, and that drawer did not ship cattle to
drawee to cover amount of draft as he had
agreed to do, pursuant to such conspiracy, evi-
dence held to sustain findings of jury in re-
sponse to special issues that payee knew of
drawer's agreement to ship cattle for amount
of draft, that there was an agreement between
payee and drawer that drawer should not ship
cattle under agreement with drawee, that draw-
er was prevented by payee from carrying out
his agreement with drawee, and that the drawer
and payee acted together in drawing draft to
obtain money from drawee without making a
shipment of cattle.

Appeal from District Court, Tarrant Coun-
ty; R. E. L. Roy, Judge.

Action by the Rhome-Farmer Livestock
Commission Company against the City Na-
tional Bank of Spur and another. Judgment
for plaintiff, and named defendant appeals.
Affirmed.

W. D. Wilson, of Spur, and McLean, Scott
& McLean and Sam Sayers, all of Fort
Worth, for appellant.

Bryan, Stone, Wade & Agerton, of Fort
Worth, for appellee.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 26, 1924.

BUCK, J. The Rhome-Farmer Livestock Commission Company, a corporation, domiciled at Fort Worth, hereinafter called plaintiff or commission company, sued Perry Fite, at the time of suit living in Shackelford county, but at the time of the transactions hereinafter detailed living at Spur, Dickens county, and the City National Bank of Spur, hereinafter called bank, to recover $6,500 alleged to be due and owing plaintiff by reason of plaintiff's having paid a certain draft in that amount drawn on it by Fite and in favor of the bank, on February 9, 1918. Plaintiff alleged that it had theretofore agreed with Fite that if he would buy cattle and ship them to it, Fite could draw on it for an amount equal to or less than the value of the cattle then or shortly thereafter to be shipped to it at Fort Worth; that Fite represented to plaintiff that he would draw a draft on plaintiff when he had accumulated a carload of cattle ready for shipment; that several drafts had been drawn by Fite on plaintiff, and always before this time a carload of cattle would arrive within a few days, from the sale of which plaintiff would reimburse itself to the amount of the draft; that on or about February 9, 1918, a draft was drawn on plaintiff by Fite for $6,500, and made payable to the bank, and in due course was paid by plaintiff.

Plaintiff further alleged that the defendant bank, its agents, officers, and managing officials, were aware and had full knowledge of the arrangement and agreement existing between plaintiff and defendant Fite, and said bank knew that said draft of February 9, 1918, as well as the several drafts drawn prior thereto by the defendant Fite on plaintiff in favor of said bank, was for cattle to be shipped at the time to the plaintiff, and that such draft represented the price and value of the cattle to be thus shipped; that notwithstanding such knowledge of the facts, said bank either made foreclosure of some pretended mortgage or lien on said cattle then held by Fite, or in some other manner took possession thereof and converted the same to its own use and benefit, and that the reasonable market value of said cattle was then and there $6,500; that although said Fite issued and delivered said draft to defendant bank, he, in violation of his promises to plaintiff, failed to ship to it the livestock represented thereby, and wholly failed and refused to ship said livestock or any livestock whatever to plaintiff, although he knew that plaintiff would pay said draft, as it did pay the same, and as a direct result of such acts and the false and fraudulent representations of said Fite and of the conversion of said livestock by said bank, plaintiff suffered loss and was actually damaged in the said sum of $6,500. Plaintiff further alleged that it was informed and believed, and therefore averred as a fact, that said

bank and its managaing officers refused to permit the said Fite to ship said livestock to plaintiff, and directed him not to do so, all of which was acquiesced in and agreed to by the said Fite, but induced him to sell and dispose of said livestock to other parties and deliver the proceeds thereof to it, which proceeds it converted to its own use and benefit; that said draft was drawn and the said bank so received the said draft with full knowledge of all the said facts and with full knowledge that the said Fite was not going to and would not ship the said livestock to plaintiff, and with full knowledge that plaintiff would pay the said draft on presentation, and with full knowledge that plaintiff would rely upon the previous representations and statements of said Fite in so paying the same, and that said bank received the proceeds of said draft and converted the same to its own use and benefit.

In the alternative, plaintiff alleged that the defendant bank received the proceeds of said draft and applied same upon some pre-existing debt which the defendant Fite then owed said bank. This allegation seems supported by the evidence that the said defendants, and each of them, then and there wrongfully confederated, conspired, and acted together for the purpose of wrongfully and fraudulently depriving the plaintiff of the value of said draft.

The defendant bank answered by way of a plea of privilege to be sued in Dickens county, by a general demurrer, certain special exceptions, a general denial, and by special denial that it knew anything of any representations, promises, agreement, or understanding, if any, made by said Fite with plaintiff as an inducement to pay said draft, or that it knew anything as to the purpose for which the proceeds of said draft were to be used by said Fite. It alleged that it had informed Fite that on account of his indebtedness to it it could not make any further advances to him for the purchase of livestock, and that it would be necessary for him to make arrangements with some one else to advance him money for the purchase of livestock; that said Fite then informed the said bank that the plaintiff would advance him the money with which to carry on his said business of buying, selling, and butchering livestock, and thereupon drew a draft on plaintiff for $6,500 and deposited the same with this defendant for credit to his account on the books of this defendant, and said Fite thereafter checked out, used, and appropriated said deposit.

Other allegations were contained in both the pleadings of the plaintiff and the defendant bank, but sufficient has been given to explain the issues of fact involved.

The defendant Fite did not answer, and a default judgment was taken in favor of plaintiff as to him. Upon trial, the follow-

ing special issues were submitted to the jury and answered as indicated:

"(1) Was there an agreement or understanding between plaintiff, Rhome-Farmer Livestock Commission Company and the defendant Perry Fite, prior to the drawing of the $6,500 draft 'on February 9, 1918, to the effect that at or about the time of the drawing of such draft, said Fite would ship to the plaintiff cattle approximately equal in value to said draft?" Answer: Yes.

"(2) Did the defendant City National Bank of Spur have knowledge of such agreement or understanding between plaintiff and Perry Fite, if any existed, at the time said draft was drawn by said Fite?" Answer: Yes.

"(3) Was there any agreement or understanding between Perry Fite and the defendant City National Bank of Spur, at the time said draft for $6,500 was drawn, that Perry Fite would not ship to plaintiff cattle of the approximate value of said draft?" Answer: Yes.

"(4) Was Perry Fite prevented by the defendant City National Bank of Spur from carrying out any agreement or understanding, if any, between him and the plaintiff to ship to plaintiff cattle to cover said $6,500 draft?" Answer: Yes.

"(5) Did Perry Fite and the defendant bank act together in drawing the $6,500 draft for the purpose of getting the money thereon without making a shipment of cattle to plaintiff approximately equal in value to the amount of draft?" Answer: Yes.

On this verdict, the court entered judgment in favor of the plaintiff and against defendants Perry Fite and the City National Bank of Spur for $6,500, with interest at 6 per cent. from March 1, 1918, and from this judgment the defendant bank has appealed.

The trial court, upon the presentation of the defendant bank's plea of privilege and the controverting affidavit thereto of the plaintiff, and upon a statement by counsel of the issues involved in the suit, stated that it appeared that the issues involved in the plea of privilege were practically the same as those involved in the cause on its merits, and he would hear the evidence before ruling finally on the plea of privilege. In its first three propositions, the appellant urges error in the action of the trial court in not first determining the issues involved in the plea of privilege and in the controverting affidavit thereto, and in the action of the trial court in failing and refusing to instruct the jury to find for the defendant on the question of venue. The last proposition is based on the alleged insufficiency of the controverting affidavit and plea to bring the same within one of the exceptions set out in the venue statute. The controverting affidavit of the plaintiff set up three grounds for sustaining the venue in Tarrant county. The first was that G. H. Connell, the president of the defendant bank, at the time of the filing of the suit and at the time the transactions occurred upon which the suit

was based, lived in Tarrant county, and all of the official acts done by him as president of said defendant bank were done and performed in Tarrant county. This ground has been abandoned by plaintiff. The second ground was that the defendant bank, together with Fite, was guilty of perpetrating a fraud upon plaintiff, by reason of the acts alleged in plaintiff's petition, and that one of the overt acts done in pursuance of said fraudulent conspiracy was the presentation to the plaintiff at Fort Worth of the draft drawn by the defendant Fite in favor of the defendant bank, and the payment of said draft by the plaintiff in Tarrant county. The third ground for sustaining jurisdiction in Tarrant county was that the trial court had jurisdiction over Perry Fite, by reason of the allegations contained in plaintiff's petition. But evidently reliance to sustain jurisdiction is placed on the second count. Both the plea of privilege and the controverting plea were duly verified.

[1] We see no error in the action of the trial court in deferring decision upon the questions involved in the plea of privilege until after the evidence on the merits of the case was before the court. In Smith v. Citizens' National Bank (Tex. Civ. App.) 246 S. W. 407, it is said, reading from the headnote:

"Where the issues on a plea of privilege and on the merits were the same, and it appeared from the evidence that the suit was brought in the proper county as the note provided for payment in the county of venue, and defendant's plea of privilege was properly overruled under Rev. St. art. 1830, subd. 5, and defendant was deprived of no substantial rights which he could have secured on separate hearing, in hearing evidence on the plea and the merits at the same time there was no reversible error."

By reference to article 1903, Vernon's Ann. St. 1918 Supp., it will be noted that an appeal from a judgment sustaining or overruling a plea of privilege only suspends the trial of the case on its merits pending the appeal, when the judgment is one sustaining the plea of privilege. In Allen v. Woodward, 111 Tex. 457, 239 S. W. 602, 22 A. L. R. 1253, the Supreme Court says:

"The Act of April 2, 1917, authorizes an appeal from a judgment sustaining or overruling a plea of privilege; but it suspends a trial, pending determination of the appeal, only in the event the judgment appealed from is one sustaining the plea. Article 1903, Vernon's Sayles' Texas Statutes 1918 Supplement."

Appellee relies on exception 7 under article 1830 for venue in Tarrant county. This exception reads as follows:

"In all cases of fraud, and in cases of defalcation of public officers, in which cases suit may be instituted in the county in which the fraud was committed, or where the defalcation occurred, or where the defendant has his domicile."

In Harris v. S. A. & A. P. Ry. Co. (Tex. Civ. App.) 221 S. W. 1118, where goods were shipped to a certain county, and were sold in such county by written instrument by defendants, who did not own the goods, but fraudulently represented themselves the owners, and who obtained payment by draft on bank, it was held that venue was properly laid in such county, though defendants did not reside therein, under exceptions 5 and 7 to article 1830; the contract having been made to be performed, and having in fact been performed, in such county. In the course of the opinion, the court said:

"The contract made by appellants with Polasek was to be performed and was performed in Karnes county. In this case appellants sent to Polasek an instrument in writing by which they sold to him the straw in Hobson, Karnes county, and drew a draft for its value on a bank in that county, and it was there paid by Polasek. The contract was necessarily executed in Karnes county, and the county court of that county has jurisdiction"—citing cases.

Action for fraud is properly brought in the county where it was perpetrated, though defendants resided in another county. Howe Grain & Merc. Co. v. Galt, 32 Tex. Civ. App. 193, 73 S. W. 828; Winter v. Terrill, 42 Tex. Civ. App. 598, 95 S. W. 761; Martin v. A. B. Frank Co. (Tex. Civ. App.) 125 S. W. 958; Jef Chaison Townsite Co. v. Beaumont Saw-Mill Co., 63 Tex. Civ. App. 186, 133 S. W. 714; Day v. Steverson (Tex. Civ. App.) 145 S. W. 1062.

[2, 3] In case of an action for deceit against a private corporation, when a part of the cause of action arises in a county different from that in which the corporation has its domicile, it may be sued in the former. In Commercial Natl. Bank v. First Natl. Bank (Tex. Civ. App.) 77 S. W. 240, defendant was located in Beeville and wrote a letter to plaintiff in Cuero, on which plaintiff acted, and which was made the basis of the suit. The letter on which plaintiff relied deceived him. It was held that venue was properly laid in De Witt county. In the instant case, the draft was drawn to be paid by plaintiff in Tarrant county, and it was paid there. We believe, under the authorities cited and many others which might be cited, that the venue in Tarrant county should be sustained. Hayter v. Hudgens (Tex. Civ. App.) 236 S. W. 232; Whitaker v. Brown (Tex. Civ. App.) 49 S. W. 1104; Evans v. Mills, 16 Tex. 196, 200; Raleigh v. Cook, 60 Tex. 438, 441. Therefore we overrule the assignments upon which the first three propositions are predicated.

We believe that inasmuch as the defendant bank is admittedly a corporation, and the draft drawn in its favor, and, pursuant to its alleged fraudulent design, was sent by it to Fort Worth with the intention that the same should be presented, where the same in fact was presented, to appellee for payment, and where the appellee paid out the money thereon, that a part of the cause of action for appellee for the resulting fraud, therefore, arose in Tarrant county, and that venue in said county could be sustained under Revised Statutes, art. 1830, subd. 24. Commercial Natl. Bank v. First Natl. Bank (Tex. Civ. App.) 77 S. W. 239; Baker-Hanna & Co. v. Kempner (Tex. Civ. App.) 204 S. W. 350; Echols v. Jacobs Merc. Co., 38 Tex. Civ. App. 65, 84 S. W. 1082; First Natl. Bank v. Childs (Tex. Civ. App.) 231 S. W. 807; Kell Milling Co. v. Bank (Tex. Civ. App.) 155 S. W. 325; Met. Loan Co. v. Reeves (Tex. Civ. App.) 236 S. W. 762.

Appellant urges that the cases of McKean v. Martin, 243 S. W. 575, Wallace v. Adams, 243 S. W. 572, Hill v. Brady, 231 S. W. 145, Hill v. Wood, 238 S. W. 309, and First National Bank v. Gates, 213 S. W. 720, all by the Courts of Civil Appeals, sustain its theory that the trial court erred in deferring a decision upon the issues involved in the plea of privilege, and in rendering judgment against defendant bank thereafter. But we believe that, even though there be some expressions in some of these cases sustaining appellant's theory, the case of Allen v. Woodward, supra, by the Supreme Court, settles the questions involved.

[4] Under the fifth proposition, error is urged in the action of the trial court in admitting the testimony of B. C. Rhome, Jr., connected with the plaintiff company, as to certain conversations and transactions had with Perry Fite out of the presence and hearing of the defendant, prior to the drawing of the draft. It is urged that defendant Fite having made no answer, and a judgment by default having been rendered against him, such testimony was inadmissible as against the defendant bank. Upon the introduction of the deposition of this witness, defendant bank objected to certain questions asked and answers made thereto as to the understanding between Fite and the commission company with reference to Fite's shipment of cattle, and with reference to his right to draw drafts on the commission company in payment of a shipment about to be made, and with reference to the practice of Fite in drawing drafts upon such shipments about to be made, etc. The court instructed the jury as follows:

"In connection with this deposition, gentlemen of the jury, I want to instruct you that you will not consider it against the City National Bank of Spur unless you find a conspiracy with the said bank and Perry Fite."

It will be remembered that the plaintiff alleged that the bank officers had a general knowledge of the course of dealings between Fite and the commission company, and of the agreement and understanding between

them as to the drawing of drafts to pay for cattle ready to be shipped, etc., and we find no prejudicial error in admitting such testimony with the instructions given by the court. In San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 123, 54 S. W. 289, 292, writ refused, it is said:

"It is a well-settled rule of evidence that, when the testimony establishes a conspiracy, the acts and declarations of a coconspirator, made in furtherance of the common design, are admissible against all of the conspirators. The principle on which the acts and declarations of other conspirators, and acts done at different times, are admitted in evidence against the person prosecuted, is that, by the act of conspiring together, the conspirators have jointly assumed to themselves as a body the attribute of individuality so far as regards the prosecution of the common design; thus rendering whatever is done or said in furtherance of that design a part of the res gestæ, and therefore the act of all.' 3 Greenl. Ev. § 94. It is immaterial whether the conspiracy be established before or after the introduction of the acts and declarations, the only requirement being that the whole of the evidence introduced on the trial establishes the existence of a conspiracy. It follows that, if the whole of the testimony introduced upon the trial of this case established a conspiracy, as alleged in the information, the acts and declarations of the representatives of the other corporations, made and done in furtherance of the common design, would be legitimate evidence against appellant."

In Jernigan v. Wainer, 12 Tex. 189, in an opinion by Judge Wheeler, the Supreme Court says:

"The principal question in the case is whether there was evidence sufficient to warrant the verdict, as to the defendant Jernigan. That a gross and flagrant fraud and outrage was practiced upon the plaintiff there can be no question. That there was a combination and conspiracy to cheat, defraud and deprive him of his property is placed by the evidence beyond a doubt. The defendant Root was a principal conspirator. Albright must have been a participant; and the evidence leaves little room to doubt that the appellant was also a participant, and as deeply implicated in the fraud as either of his confederates.

"Frauds, of the character of that disclosed by the record, can seldom be proved by direct and positive evidence. When men enter into conspiracies, they are not likely to call in a witness. They resolve their schemes clandestinely and in secret. Their purpose is imposition and deception; and secrecy is necessary to its accomplishment. In such cases the injured party must necessarily have recourse to circumstantial evidence. For it is only by the inferences and deductions which men properly and naturally draw from the acts of others in such cases, that their intentions can be ascertained."

See 25 R. C. L. p. 1061; 12 C. J. pp. 633, 634, and notes on page 634. The assignment is overruled.

While the witness for plaintiff, John Vick, was on the stand, he testified that he was bookkeeper and cashier for the plaintiff company in February, 1918. He was handed the draft for $6,500 and stated that he had seen it before. He further testified:

"I had something to do with the payment of that draft. It was paid to the First National Bank, Fort Worth. That draft was paid at the office of the Rhome-Farmer Livestock Commission Company in the Exchange Building, in Fort Worth, Tarrant county. The draft was paid on February 11th or 12th. That all appears from some record out there. I do not have it with me. I made a memorandum of it. The draft was presented by the collector of the First National Bank of Fort Worth; I do not remember the name. I do not remember whether I know him or not. * * * All I did with this was that check. I did not shell the money down—I gave a check; I just issued the check. That book out there shows what check was issued, and everything about it. All that I did was to give some one, whose name I do not know, a check payable to the First National Bank of Fort Worth."

[5] We do not believe that the witness testified to any facts not within his own knowledge. He paid the check, and could testify to that fact. See Echols v. Jacobs Merc. Co., 38 Tex. Civ. App. 65, 84 S. W. 1082, 1084, writ refused.

[6] The court submitted the issue:

"Did Perry Fite and the defendant bank act together in drawing the $6,500 draft for the purpose of getting the money thereon without making a shipment of cattle to plaintiff approximately equal in value to the amount of draft?"

To this issue the jury answered, "Yes."

The defendant objected to the submission of this issue and specially to the failure to define the term "act together," and submitted two special charges, in substance the same, one of which was as follows:

"Gentlemen of the jury: I charge you as a part of the law in this case that by the words 'act together,' as used in special issue No. 5 of the court's main charge herein, is meant that said bank and the said Perry Fite had a common understanding or agreement with respect to the shipment of the cattle and the drawing of the draft, and it is not sufficient that their physical actions were in concert and together, and before you can answer this issue in the affirmative you must find and believe from the evidence that the 'acting together' was by mutual concert, common agreement, or general understanding, as between the said bank and the said Fite."

It will be remembered that in answer to issue No. 2 the jury found that the defendant bank had knowledge of the agreement or understanding between plaintiff Perry Fite at the time the draft was drawn by said Fite that, at or about the time of the drawing of a draft, said Fite would ship to the plaintiff cattle approximately equal in value to said draft. And in answer to issue No. 3 the jury found that there was an agreement between the defendant Fite and defendant bank, at

the time the draft was drawn, that Perry Fite would not ship to plaintiff cattle of the approximate value of said draft. In answer to issue No. 4, the jury found that Perry Fite was prevented by the defendant bank from carrying out any agreement or understanding between him and the plaintiff to ship such cattle. In view of the submission of these three issues, and the answers thereto, which seem to be supported by the evidence, it seems plain to us that the words "act together" conveyed a meaning which the jury were able to understand without any further explanation and definition. Appellant recites in support of this proposition a number of cases, some of which we will notice briefly.

In Norton v. Houston, 235 S. W. 963, by this court, in an opinion by Chief Justice Conner, it was held that where, in a will contest case, on evidence of only slight deviations from normal mental soundness by testatrix, the jury found her mentally unsound, failure to define "unsound mind" on submitting special issue thereon was error. This decision was based on the fact that the authorities hold that the words "unsound mind" are of such variable significance that their value in any given case would depend entirely on the relation that they bear to a particular person in connection with the particular act under inquiry. That in the case before the court the question to be determined was whether the testatrix had sufficient mind and memory to intelligently understand the nature of the undertaking in which she was about to engage, to wit, the disposition of her property, and to comprehend generally the nature and extent of the property which constituted her estate, and which she intended to dispose of, and to recollect the objects of her bounty. This court decided that the terms as used in the connection shown in the case were of a technical character and should have been clearly defined.

In Davis v. Hardwick, 43 Tex. Civ. App. 71, 94 S. W. 359, also by this court, and by Chief Justice Conner, it was shown that certain capital stock of the Hotel Worth Company had been transferred in blank by appellant so as to constitute a pledge and in a very important sense, at least, to pass the title. The pledgee was charged with converting the stock, and, under the circumstances, it was held that the term "conversion" should have been defined. Probably the average juror would not know what was meant by the legal term "conversion" unless an explanation or definition was given by the court. But we do not believe that in this case, especially where different elements of the alleged fraud on the part of the bank and Fite were separately found by the jury, and they must have understood what was meant by the court by the words "act together," that the jury were misled or were

not properly informed by the submission of such issue, without the further submission of a definition of the words "acted together." Hence we overruled the assignment.

Assignments other than those brought forward in the brief by propositions heretofore discussed will not be noticed in detail, but we have examined them and find no error.

Therefore the judgment of the trial court is in all things affirmed.

### On Motion for Rehearing.

[7] Appellant bank urges that the evidence in the statement of facts fails to sustain the finding of the jury to special issues 2, 3, 4, and 5. That since appellee offered E. C. Edmonds, president of defendant bank, as a witness, it vouched for his credibility, and cannot question his testimony except to show that he was honestly mistaken. He cites in support of this proposition such cases as G., C. & S. F. Ry. Co. v. Johnson, 28 Tex. Civ. App. 395, 67 S. W. 182; Casey-Swasey Co. v. Virginia State Insurance Co., 33 Tex. Civ. App. 85, 75 S. W. 911; Paxton v. Boyce, 1 Tex. 317, 325. In the last-cited case, the Supreme Court, speaking through Justice Lipscomb, said:

"It is a rule of evidence, that when one party makes a witness of the other, he does it under the responsibility and condition that he thereby places him, on the score of credibility, beyond impeachment. He may prove the witness mistaken, by proving the party [fact?] to be otherwise, but we will not be allowed to impeach his credibility."

Though a party cannot ordinarily discredit his own witness, he may prove facts inconsistent with the witness' testimony, even though he discredits the witness by doing so, and this rule applies in both civil and criminal cases. G., C. & S. F. Ry. Co. v. Mitchell, 21 Tex. Civ. App. 463, 51 S. W. 662. In 28 R. C. L. p. 643, § 227, it is said:

"It is well settled that although a party may not impeach his own witness directly, he may show that the statements made by him are not in fact true, and thus incidentally discredit him. This is true not only where it appears that the witness was innocently mistaken, but even where the evidence may collaterally have the effect of showing that he was generally unworthy of belief. This is one of the exceptions to the general rule that a party cannot impeach his own witness. Indeed were a party forbidden to contradict his own witnesses, every one would be at the mercy of his own witnesses, and if the first witness sworn should swear against him he would lose the testimony of all the rest, which would be a perversion of justice."

In 28 R. C. L. p. 646, § 230, it is further said:

"The generally accepted rule is that although a party who calls the adverse party as a witness cannot directly attack the witness for the mere purpose of impeachment, he is not concluded by his testimony and is at liberty to

prove the facts to be otherwise than the witness has represented them. There are, however, manifestly stronger reasons for permitting the contradiction and impeachment of a party who is called as a witness than of an ordinary witness, and it has frequently been held that prior material admissions and declarations of the witness, being declarations against interest, are competent independent evidence, although they contradict his testimony. There is, however, also authority to the contrary on this point."

Article 815 (formerly 795) of the Texas Criminal Procedure provides:

"The rule that a party, introducing a witness, shall not attack his testimony is so far modified as that any party, when facts stated by the witness are injurious to his cause, may attack his testimony in other manner, except by proving the bad character of the witness."

While this rule of evidence is contained in the Criminal Procedure, we believe it states the rule as held by our courts in civil cases as well. See Jones Blue Book of Evidence, § 854, p. 242; Barnard v. State, 45 Tex. Cr. R. 67, 73 S. W. 957; Abbott on Civil Jury Trials (4th Ed.) pp. 300 to 310.

[8] Bearing in mind the rules hereinbefore discussed, we will now note some of the testimony tending to sustain the issues found by the jury. Edmonds testified that he was president of the defendant bank, and at the time of the transactions involved in this suit was cashier thereof, in the active discharge of its business. The evidence further shows that Fite had been doing business with the defendant bank for some time, and that prior to the time the $6,500 draft was drawn other drafts were drawn by Fite on plaintiff, and that plaintiff paid the same, and simultaneous shipments of cattle were made by Fite to cover the amount of the drafts. Edmonds testified:

"I understood, when he became indebted to the bank, that his means of obtaining money to pay the indebtedness was out of the proceeds of the sale of the cattle that he might ship out, and pay for them that way. I understood that these drafts which he drew on the Rhome-Farmer Commission Company were supposed to be upon shipments that he was then contemplating making."

He further testified:

"When Perry Fite drew that draft (referring to the first draft drawn by Perry Fite on appellee), I had some conversation with him about his drawing it. It is my memory that he told me he was coming on down to Fort Worth, and would be in Fort Worth before the shipment got here; that is my memory of the first transaction. Naturally I supposed at any time when he drew a draft he was going to ship out. He said to me at that time that he believed that Rhome-Farmer would pay his draft; and in connection with that statement, he stated to me that he was going to see the Rhome-Farmer Commission Company and make arrangements whereby they would pay the draft or something to that effect. The making of that arrangement was coupled with the making of a shipment. It is my understanding that all the subsequent drafts were made under the same character of arrangement; I would think that he had contemplated making shipment after drawing any of these drafts, even the last one."

At the time the draft was drawn, Fite owed the bank an overdraft of $2,194.19, on outstanding acceptances which the bank had paid, $3,529.47, and two notes aggregating $4,500, with accumulated interest, both notes past due. Edmonds sent for Fite, and demanded of him that his indebtedness to the bank be reduced. He testified:

"I was bent on getting the money for the bank, and that was my object. I will say that was my object."

At the same time, Edmonds took a chattel mortgage on every foot of livestock held by Fite, or that might come into his possession. It was provided in that mortgage that the livestock covered by it should not be taken out of the county without the consent of the bank, and if shipped the proceeds were to be paid to the bank. Upon this matter, Edmonds testified:

"As to whether the bank permitted Perry Fite to ship them (Fite's cattle) out without having an agreement with him that the proceeds derived from the sale of such mortgage property should be remitted to the bank, I will say that the only agreement we had with him was embodied in the mortgage, and we supposed that he would comply with the provisions of the mortgage. * * * I don't remember whether he asked permission to ship out any of the stock or not. I would say that he did not, because he might have known we would not release our mortgaged property to enable him to do that. * * * I have already testified that the terms of the mortgage in fact covered all of the stock that he had on hand at that time."

Furthermore, when the representatives of plaintiff went to Spur, later, and asked Mr. Edmonds what had become of the money received from the $6,500 draft, Edmonds replied that it had been placed to Fite's credit, and he was still overdrawn.

In the interest of reasonable brevity, we will state that we have carefully gone over the statement of facts, and believe the evidence is sufficient to sustain the answers of the jury to issues Nos. 2, 3, 4, and 5.

The motion for rehearing is overruled.