## HENDERSON v. SHACKELFORD.
### No. 3274.

Court of Civil Appeals of Texas. El Paso.
Oct. 31, 1935.

Mae M. Ament, of Alpine, for appellant.

WALTHALL, Justice.

Appellant, Mrs. Camilla Henderson, a feme sole, brought this suit in the county court of Brewster county against appellee, Willie Shackelford, to recover 1,102 pounds of mohair, property of appellant, and alleged to be her property and to have been converted by appellant, and in the alternative to recover its value alleged to be of the value of $551.

From the record before us the only answer filed by appellee to appellant's suit, which we think to note, is that of general denial.

The case was tried to a jury and submitted upon special issues.

The record shows that on the trial the appellant, through her attorney, submitted and requested the giving of the following special issues to the jury.

"Special Issue No. 1:

"Gentlemen of the jury: If you believe from the preponderance of the evidence in this case that the defendant, Willie Shackelford, did on or about the 21st day of February A. D. 1934, agree verbally with the plaintiff to deliver to her all of the mohair sheared by him from said 441 head of goats then you will answer this interrogatory yes.

"If you do not believe there was an agreement by the defendant to deliver all of said mohair, then you will state in your answer what he did agree to deliver."

The above issues, as requested, were submitted by the court. The jury answered the first question, "No," and the second, "1 bag, 325 pounds."

On other issues submitted by the court the jury found, under appellee's evidence, that one bag of mohair of 325 pounds was sheared from the angora goats and that said mohair "had no reasonable cash market value."

The court entered judgment that appellant recover of appellee "the title to and the possession of one bag of mohair, weighing 325 pounds and that she have all necessary writs for the seizure and delivery of such property to plaintiff," and the costs of suit.

The appellant prosecutes this appeal, and in her brief submits some 9 propositions assigning errors.

Appellee has filed no brief in this case.

From the view we take of the case we think we need not discuss severally the propositions submitted.

The evidence other than that of appellee clearly shows that 441 goats were sheared and that 1,102 pounds of mohair was the amount sheared. The evidence other than that of appellee shows without

contradiction that the mohair at that time had a market value, and that the value was 35 or 50 cents per pound. The evidence other than that of appellee shows that appellee agreed with appellant, before he sheared the goats, that he would shear them and would deliver to appellant the goats and all the mohair sheared from them. The evidence shows that appellee sheared the goats and delivered them to appellant, but refused to deliver to appellant the mohair.

The record shows, without quoting the evidence, that appellant, on the night before the goats were sheared, delivered to appellee two notes she owned and held, signed by appellee, in consideration for the goats, and which notes appellee accepted as consideration for said goats, and agreed to have the goats sheared for appellant. On the trial, appellee, Willie Shackelford, was called by appellant to testify. He testified as follows: "My name is Willie Shackelford; I live in Brewster County; yes, I know Mrs. Camilla Henderson and have known her for a long time; yes, she did come down to my place about the first of February, 1934, and delivered two notes to me. The goats had not been sheared when I received the notes; no, I did not agree to give her the mohair because I needed to pay my expenses with it; no, I have never paid the Mexicans for shearing Mrs. Henderson's goats because I have never had the money; yes, I did pay them for shearing all of the other goats they sheared at that time. No I did not agree to give her all of the mohair from the 75 head; I do not know whether the mohair had any value at that time or not; I would not say."

On cross-examination by appellee's attorney, appellee testified: "No, I did not agree to give Mrs. Henderson any of the mohair that night; I could not afford to but when I met her in Marathon I told her I would give her one bag if that would satisfy her; she would not accept that. I do not know that the mohair had any value at that time or not; I did not sell mine. It is now in storage at L. Swartz & Company, at Uvalde. It has not sold yet. I shipped it down there after Mrs. Henderson filed this suit."

Other evidence in the record, than that of appellee, without quoting it, is to the effect that appellee, at the time he sold the goats to appellant, agreed to deliver to her the mohair.

At the request of appellee the trial court, over objection of appellant, timely made, gave to the jury the following charge: "The plaintiff in this case introduced the witness Billie Shackelford as her witness and in doing so she vouched for his integrity and truthfulness and is bound thereby; and the defendant had a right in law to cross examine him, the said witness, on any issue and the plaintiff is bound by whatever statements or testimony was given by the said witness, Billie Shackelford, and in determining the issues in this case you will take this special charge into consideration."

Under the above charge requested by appellee and given by the court, the jury, in considering their verdict, was necessarily confined to the evidence of appellee, and the court entered judgment on the verdict as directed in the special charge.

The charge given and the judgment entered thereon is based upon the fact as shown by the charge itself that appellant offered appellee as a witness, and that in doing so appellant "vouched for his integrity, truthfulness, and is bound thereby."

The court was in error in giving the charge.

In criminal cases the rule is stated in article 732 of the Code of Criminal Procedure. The rule is there stated to be that a party introducing a witness shall not attack his testimony is so far modified as that any party, when facts stated by the witness are injurious to his cause, may attack his testimony in other manner, except by proving the bad character of the witness. In 1 Wharton, Ev., par. 559, it is said that: "While a party cannot ordinarily discredit his own witness his right to prove facts inconsistent with those stated by such witness is unquestioned even though this discredit the witness materially."

In Gulf, C. & S. F. Ry. Co. v. Mitchell, 21 Tex.Civ.App. 463, 51 S.W. 662, the Austin court applied the rule in criminal cases to civil cases and referred to the rule as stated.

In City National Bank v. Rhome-Farmer Livestock Commission Co. (Tex.Civ. App.) 259 S.W. 184, 189, on motion for rehearing, the Fort Worth court quoted the rule announced by the Supreme Court, Paxton v. Boyce, 1 Tex. 317, 325, in which it is said that one party making a witness of the other party may prove the witness

mistaken by proving the fact to be otherwise. In that case the Fort Worth court quotes with approval the rule as stated in 28 R.C.L. p. 643, par. 229, where it is said: "It is well settled that although a party may not impeach his own witness directly, he may show that the statements made by him are not in fact true, and thus incidentally discredit him. * * * Indeed were a party forbidden to contradict his own witnesses, every one would be at the mercy of his own witnesses, and if the first witness sworn should swear against him he would lose the testimony of all the rest, which would be a perversion of justice."

In 28 R.C.L. p. 646, par. 230, it is further said: "The generally accepted rule is that although .a party who calls the adverse party as a witness cannot directly attack the witness for the mere purpose of impeachment, he is not concluded by his testimony, and is at liberty to prove the facts to be otherwise' than the witness has represented them."

28 R.C.L. p. 643, par. 227, where it is said: "A party calling the opposite party as a witness is not bound by his testimony but . may contradict him by introducing other evidence to prove a state of facts contrary to that to which the witness testifies."

The rule stated in our criminal procedure, supra, has been applied in civil cases.

For the reasons stated, the case is reversed and remanded.